# FIRST NATIONAL BANK OF HELENA, RESPONDENT, v. ROBERTS ET AL., APPELLANTS.

EJECTMENT — *Pleading — Motion to make more specific.* — A complaint in ejectment which avers that at the time set forth "the plaintiff was the owner, seised in fee, and entitled to the possession" of the premises described, and avers that "while plaintiff was so seised, the defendant, upon the ———— day of March, 1889, without right or title, entered into possession of the demanded premises, ousted and ejected the plaintiff therefrom, and wrongfully withholds the possession thereof from plaintiff to its damage in the sum of five hundred dollars," contains sufficient averments of title and ouster, and a motion to make more specific was properly denied. (Cases of *McCauley* v. *Gilmer*, 2 Mont. 202; *Billings* v. *Sanderson*, 8 Mont. 205, cited.)

SAME — *Answer— Defense— Motion to strike out.* — An averment in an answer to a complaint in ejectment that the plaintiff, a national bank, had no legal capacity to take a deed to the premises in controversy, by reason of the provisions of the laws of the United States governing national banks, is not a defense available to the defendant, and was properly stricken out on motion of plaintiff.

PRACTICE — *Motion for a new trial— Sufficiency of specification of particulars.* — Where the specifications of particulars, in which the evidence is insufficient to justify the verdict, are merely statements of the conclusions of the appellant that the evidence shows facts contrary to the findings of the jury, and no variance between the facts found by the jury and the evidence is pointed out, and no specification that any fact found by the jury is not sustained by the evidence, with the particulars in which the evidence is insufficient, they are not such specifications as required by subdivision 3 of section 298 of the Code of Civil Procedure.

NOTARY PUBLIC — *Interpretation of statutes.* — Section 547 of the Code of Civil Procedure, which provides that a judge shall not act as such in an action or proceeding to which he is a party, or in which he is interested, when he is related to either party by consanguinity or affinity within the third degree, or when he has been attorney or counsel for either party in the action or proceeding, applies to a judge of a court, and does not include notaries public, nor apply to their actions in taking and certifying an acknowledgment to a deed.

SAME — *Acknowledgments — Instructions.* — The acknowledgment of a deed is valid when taken by a notary who is the attorney and nephew of a party, who, though active in procuring its execution, is neither a party to the deed nor beneficially interested in its execution or delivery; and instructions which assumed that the deed was executed for the benefit of such party were properly refused.

*Appeal from First Judicial District, Lewis and Clarke County.*

The cause was tried before Blake, C. J.

*R. G. Davies,* and *G. W. Murphy,* for Appellants.

The court erred in refusing to give instructions 7 and 8 asked by the defendants, to wit: 7th. "That if you believe from the evidence that the notary, A. K. Barbour, who took the acknowledgment of the deed, was the attorney and nephew of S. Hauser, for whose benefit it was made, and that said Barbour was a member of the firm of Bullard and Barbour, attorneys, who had charge of the procurement of the said conveyance, and that they, as such, were personally interested in the said conveyance, you should treat the acknowledgment void." 8th. "If you believe from the evidence that Bullard and Barbour were employed as attorneys for Hauser to obtain the conveyance from the defendants of the land in controversy, and that by his direction they took the deed in the name of Bullard as grantee for his benefit, and that Barbour, in pursuance of such employment, and as his attorney, took the acknowledgment, then you should treat the acknowledgment as void." As to Barbour's incapacity to take the acknowledgment. We insist that .the taking of an acknowledgment of a married woman is a judicial act, and that any other doctrine is contrary to the weight of American and English authority, and especially in the case where the examination and acknowledgment *is the execution of the deed.* (*Montana Nat. Bank* v. *Schmidt,* 6 Mont. 610; *Smith* v. *Pearce,* 85 Ala. 264; 7 Am. St. Rep. 44; *Heeter* v. *Glasgow,* 79 Pa. St. 79; 21 Am. Rep. 46; *Williams* v. *Baker,* 71 Pa. St. 476; *Cover* v. *Manaway,* 115 Pa. St. 338; 2 Am. Rep. 552.) The justice who takes and certifies the acknowledgment of the wife to a deed is acting judicially. (*Loudon* v. *Blythe,* 16 Pa. St. 532; 55 Am. Dec. 527.) The judge or justice acts judicially, not ministerially. (*Singer Manuf. Co.* v. *Rook,* 84 Pa. St. 442; 24 Am. Rep. 204; *Jamison* v. *Jamison,* 3 Whart. 469; 31 Am. Dec. 536; *Johnston* v. *Wallace,* 53 Miss. 331; 24 Am. Rep. 699; *Jones* v. *Porter,* 59 Miss. 628; *Kerr* v. *Russell,* 69 Ill. 666; 18 Am. Rep. 634; *Wambole* v. *Foote,* 2 Dak. 1.) *Lynch* v. *Livingston,* 6 N. Y. 422, seems to recognize a different doc-

trine, but in *Stevens* v. *Hampton,* 46 Mo. 404, Judge Bliss says, as to this case and another, *Kimball* v. *Johnson,* 14 Wis. 682, there is no real conflict. In the former case an ordinary single acknowledgment was held to be a ministerial act, and hence did not come under the prohibition of the action of judges or jurors who were relatives of the parties. (*National Bank* v. *Conway,* 14 Bank. Reg. 513; *Withers* v. *Baird,* 7 Watts, 227; 32 Am. Dec. 754; 1 Am. & Eng. Encycl. of Law, 145; *Drury* v. *Foster,* 2 Wall. 24; *Hitz* v. *Jenks,* 123 U. S. 297; *Harkins* v. *Forsyth,* 11 Leigh, 294; *Greene* v. *Godfrey,* 44 Me. 25; *Dolph* v. *Barney,* 5 Or. 191; *Banks* v. *Ollerton,* 10 Ex. 168–182.) If Barbour, the officer, acted in a judicial capacity, then his action is contrary to the provisions of the Montana statute, that "a judge shall not act as such, in any proceeding in which he is interested, when he is related to either party in the third degree, or when he has been attorney or counsel for either party in the proceeding." Also, "a judge shall not have a partner acting as attorney in any court." (Comp. Stats. fifth div. §§ 547, 549, 550.) Barbour was certainly interested in the deed. He was looking after the interest of his client, Hauser, and his employment had reference not alone to the judicial duty of taking the acknowledgment, but this proceeding had reference to the case in which he was attorney for Hauser, in the settlement of which this deed was to cut an important figure. He was also related to Hauser in the third degree. As to the nature of the interest which will disqualify, see *Wilkowski* v. *Halle,* 37 Ga. 682; 95 Am. Dec. 374; *Tillinghast* v. *Walton,* 5 Ga. 335; approved in *Glanton* v. *Griggs,* 5 Ga. 429. A person interested in a deed cannot take the acknowledgment. (*Stevens* v. *Hampton,* 46 Mo. 404; *Wilson* v. *Trear,* 20 Iowa, 231.) An acknowledgment taken by a trustee in a deed is void. (Proffatt on Notaries, p. 33; *Groesbeck* v. *Seeley,* 13 Mich. 329.) An attorney for a party to a suit cannot take an acknowledgment or affidavit. (*Taylor* v. *Hatch,* 12 Johns. 340; Jones on Chattel Mortgages, 249.) In taking the acknowledgment of a married woman the officer is certainly acting in a judicial capacity, as it is necessary for him to examine her as to certain facts, the truth of which it is necessary for him to verify before he can take the acknowledgment, and he decides upon the effect

of the evidence which he takes upon this examination. (*Dodge v. Hollingshead,* 6 Minn. 1; 80 Am. Dec. 433.) An attorney cannot act as such in any other capacity with reference to a suit. (*White* v. *Haffaker,* 27 Ill. 349.) Devlin, in his work on Deeds (vol. 1, p. 584, and note), seems to take a different view; but the authorities cited by him have been overruled in Arkansas, and he follows New York as to an ordinary acknowledgment, but admits the judicial idea as to married women. The doctrine that this is a judicial act is laid down as the law in both Canada and England, and the following case holds that if there had been a disqualifying statute in Canada and England, as there is in Montana, that Barbour was disqualified: *Romanes* v. *Fraser,* 16 Grant, U. C. 67. There was no consideration between Roberts and the bank, or if so, the consideration was illegal. The bank had no right to make a contract to indemnify the sureties. A national bank could not take the title in this way. (See National Banking Law.)

*Wade & Wallace,* for Respondent.

None but the United States can object to a national bank taking a mortgage or trust deed, in the cases prohibited by the national banking law, or under any circumstances. (*Union Nat. Bank* v. *Matthews,* 98 U. S. 621; *National Bank* v. *Whitney,* 103 U. S. 99; *Fortier* v. *New Orleans Nat. Bank,* 112 U. S. 439.) The complaint was the ordinary complaint of ejectment, and therefore defendants' demurrer and motion were wholly without merit. The first proposition urged by appellants is that the acknowledgment taken by Barbour, notary, was void; *first,* because of his relationship to Hauser; *second,* because of his being interested in the deed. The authorities cited by counsel to sustain his proposition that the taking of an acknowledgment by a notary is a judicial act, are inapplicable upon this proposition, and none of them in any manner sustain his contention that a notary, so acting, would be a judge within the meaning of the Montana Statutes, sections 547, 549, 550, fifth division, and the authorities cited, which are pertinent even to the former point, simmer down chiefly to those from the States of Pennsylvania and Mississippi; and in all of the authorities cited, save one or two, no question of the incapacity of the notary, from any

cause, was involved. We contend that the weight of authorities, as judged by the States, is adverse to the position that the act of the notary is judicial in this character, and in this view are upheld by the opinion of the eminent compiler of the American Decisions, Mr. Freeman, who in a note in the forty-first American Decisions, 168, expressly so states, and also by the following authorities: *Lynch* v. *Livingston*, 6 N. Y. 422; *Kimball* v. *Johnston*, 14 Wis. 672; *Biscoe* v. *Bird*, 15 Ark. 655; *Gill* v. *Fauntleroy*, 8 Mon. B. 177; *Odiorne* v. *Mason*, 9 N. H. 24; *Schultz*· v. *Moore*, 1 McLean, 520. The notary, however, must certainly act in a ministerial capacity in Montana, for the reason that by the terms of the organic act of the Territory, all judicial functions and power is vested exclusively in the District Court, a Supreme Court, Probate Court, and in justices of the peace. That this is an exclusive grant of judicial power was expressly decided in *Custer County* v. *Yellowstone County*, 6 Mont. 39. Again, our Supreme Court has decided, that the certificate of acknowledgment, under our laws, is but *prima facie* and not conclusive evidence of its contents. And that the true distinction, as to whether the act of the notary is judicial or ministerial, is whether his certificate is conclusive or *prima facie* evidence, is expressly recognized, and is the distinction drawn in *Hitz* v. *Jenks*, 123 U. S. 305; while all of the authorities in Pennsylvania and Mississippi, holding the act of the notary to be judicial, base it upon the ground that his certificate is conclusive evidence of the contents, and unassailable to innocent third parties, and only assailable, as between the parties, upon the showing of fraud or imposition. The effort of counsel in upholding the judicial character of the act was to bring the notary, Barbour, within the inhibition of our statutes, *supra*. These sections have reference to the presiding judge of a court or judicial tribunal so acting, the word "judge" alone being used, and the context disclosing that it had reference to a judicial officer who could preside in an action or proceeding. The Georgia case cited by appellants has no application, on account of peculiar statutes, to the questions under consideration; besides, even were it otherwise, the practice has been so general and so common in this State, that the doctrine *communis error facit jus* would certainly prevail. The authorities cited by counsel are simply to

the effect that a grantee in a deed may not take the grantor's acknowledgment (which would disqualify Bullard, but not Barbour); and the theory and reasoning of the decisions are, that the disqualification exists because of actual interest in the premises conveyed. This is as far as the doctrine goes. Defenses of this character cannot be taken advantage of unless they are specially pleaded. (*Dolph* v. *Barney*, 5 Or. 208; *Greene* v. *Godfrey*, 44 Me. 25; *Hartly* v. *Frosh*, 6 Tex. 208; 55 Am. Dec. 772; *Graham* v. *Anderson*, 42 Ill. 514; 92 Am. Dec. 89.)

Harwood, J.— Appeal from the District Court in and for Lewis and Clarke County, First District of Montana. This is an action in the nature of ejectment, brought by the First National Bank of Helena, respondent, to obtain a decree for the recovery of possession of lots 1, 2, and 3, and the southerly $19\frac{1}{2}$ feet front of lot No. 4, and lots Nos. 9 and 17, all in block 48, in the town site of Helena, Lewis and Clarke County, Territory of Montana, alleged to be unlawfully withheld from respondent by the appellants. The complaint avers "that on the twenty-seventh day of September, 1886, the plaintiff was the owner, seised in fee, and entitled to the possession" of the premises mentioned; that, while the plaintiff was so seised, the defendants, on the ———— day of March, 1889, without right or title, entered into possession of the demanded premises, ousted and ejected plaintiff therefrom, and unlawfully withholds the possession thereof from plaintiff, to its damage in the sum of $500; that plaintiff demanded the possession of said premises, which defendants refused to surrender. The defendants appeared, and interposed a motion to require plaintiff to make its complaint more specific, and also demurred thereto; both of which pleadings were by the court properly overruled, and to which ruling defendants excepted. (*McCauley* v. *Gilmer*, 2 Mont. 202; *Billings* v. *Sanderson*, 8 Mont. 205; *Payne* v. *Treadwell*, 16 Cal. 220.)

The defendants then filed their answer, which, in effect, denied all the material allegations of the complaint, and in addition thereto alleged a series of transactions by way of further defense to the plaintiff's complaint. It is necessary, in the consideration of the questions brought here on appeal, to keep prominently in

view such new matter of defense, and the same is here condensed into the following statement: The defendants, further answering, say: That the said property is, and has been since 1867, the home and homestead of defendants and family. That on the tenth day of May, 1886, the defendant, W. K. Roberts, and one S. T. Hauser, and Dan E. Floweree were being sued by the commissioners of the county of Lewis and Clarke on a bond executed by said W. K. Roberts, as treasurer of said county, for an alleged defalcation of said defendant, as such treasurer, for the sum of $42,000. That said defendant, W. K. Roberts, was also, at the same time, under indictment for embezzlement of the funds of said county to the amount of $38,000. That Massena Bullard and Ashburn K. Barbour were the attorneys of said Hauser, and defending the said suit upon said bond for said Hauser, and also representing the plaintiff in regard to its liability to the said bondsmen, whom the said bank, without the knowledge of defendants, or either of them, had agreed to indemnify against all loss, if any, as such sureties on the bond of defendant, W K. Roberts. That the consideration for such promise on the part of said bank to said sureties on said bond was to obtain the deposit of the funds of said county in said bank. That such deposits amounted to about the sum of $800,000 during the time defendant was such treasurer, which funds were deposited in said bank, and used in the general business thereof. That the defendant, W. K. Roberts, not knowing of said agreement between the said bank and his sureties on his bond, and fearing that said sureties might be injured, and being pressed by said Hauser to give him security against loss as such surety, and being at the time in feeble health and of unsound mind, and said Mary Roberts, fearing that her husband, W. K. Roberts, would be imprisoned in the penitentiary, they were at length compelled to turn over all the property they possessed to the said Hauser to secure him against loss as such surety, which loss said Hauser led the defendant to believe would fall upon himself and his co-surety, Floweree. That said Hauser and said Bullard and Barbour, his agents and attorneys, conspired together to unlawfully injure defendants in respect to their estate, and prepared a deed for said property in fee-simple absolute, and inserted the name of said Bullard therein as grantee, and had

said Barbour attend to the execution thereof as notary public; the object being to obtain said land for the benefit of said bank without the knowledge or consent of defendants, and without any consideration therefor. That said Bullard and Barbour were employed, as a firm, to procure said deed, and for the protection of said bank. That said Bullard drew said deed, and said Barbour took the acknowledgment thereof, secretly concealing the fact from the knowledge of defendants that said deed of conveyance was made to said Bullard as grantee, and that the same was an absolute conveyance of said land, with warranty of title. That, in fact, the only object of defendants was to give security to said Hauser and Floweree, so far as said property might extend in value, for re-imbursement of any sum they might have to pay as sureties for defendant, W. K. Roberts, as aforesaid. The said sureties had a good defense to the action against them on the bond aforesaid. That the commissioners of said county became aware of that fact, and proposed a compromise to said sureties, Hauser and Floweree, for the sum of $19,000, in full settlement of defendant, W. K. Roberts', alleged defalcation. And said Bullard and Barbour, as attorneys for Hauser, paid said sum without the knowledge or consent of defendants, or either of them, and said suit was dismissed. That the said compromise sum of $19,000 was paid, in fact, by said bank, and not by said Hauser and Floweree. That thereupon said Bullard, in fraud of defendants' right, conveyed said property, on or about September 26, 1886, to said First National Bank by direction of said Hauser, president of said bank, and without the knowledge or consent of defendants. That at the time the said Barbour took the pretended acknowledgment of defendant, Mary J. Roberts, to said deed he did not explain the contents thereof to her, and she was never acquainted with the contents of the same, nor knew that said Bullard was grantee therein, until about the time this suit was instituted. That said deed was procured through fraud, duress, coercion, concealments, and fraudulent representations, and without adequate consideration, and under such circumstances that neither of them could withhold their consent. That said W. K. Roberts was not of sufficient mental capacity to execute said deed, and his mental disability was known to said Hauser and the plaintiff. That Hauser repre-

sented to said defendant, W. K. Roberts, in order to procure said deed, that he would not be disturbed in the possession of said property; which representation was relied on by said defendant, W. K. Roberts. That the said bank had no legal capacity to take a deed to said land, by reason of the provisions of the laws of the United States governing national banks.

The last allegation, denying the capacity of the plaintiff to take and hold said land, was by the court stricken from the answer, on motion of plaintiff; to which action defendant excepted. The action of the court on this point must be sustained as proper in an action of this nature. (*Union Nat. Bank* v. *Matthews*, 98 U. S. 621; *National Bank* v. *Whitney*, 103 U. S. 99; *Fortier* v. *New Orleans Nat. Bank*, 112 U. S. 439.)

The plaintiff filed its replication, denying all the affirmative allegations of defendants' answer, except that portion stricken out; and, touching the transactions set forth in defendants' answer as new matter, plaintiff alleged: That both defendants had full knowledge of all the terms and conditions of said deed, and that the same was made to Bullard, as grantee, as a conveyance absolute, upon the consideration that said Hauser would settle said suit upon said bond with the commissioners of said county before the trial of the criminal action pending against defendant, W. K. Roberts, and also satisfy a mortgage debt for $3,000 against said premises owing and due to one Perkins; and that said transaction was made in good faith, and at the request of defendants. That defendant was then in good health, with faculties unimpaired. That Bullard was named in said deed as grantee at the request of defendant, W. K. Roberts, and that Barbour took the acknowledgment of said deed at the request of defendants. That the property in question was then of the value of about the sum of $5,000. That defendants then had other property standing in the name of defendant, Mary J. Roberts, which defendants proposed to include in and convey by said deed; but said Hauser declined to receive the same. That said Hauser and Floweree had no meritorious defense to the action of the said county against them as sureties on said bond. That a personal judgment had then been rendered against said W. K. Roberts, as principal on said bond, before said compromise. That the compromise was made at the solicitation of

defendant, W. K. Roberts. That said property was conveyed to said Bullard, as trustee, by express understanding with said Roberts, with direction to convey the same to whom Hauser directed, after the satisfaction of said judgment in favor of said county, and against said Roberts, in the sum of $43,000, and the said mortgage debt of $3,000 against said property owing to said Perkins.

The action was tried by the court and a jury upon the issues joined by the complaint, answer, and replication. The jury found a general verdict for the plaintiff, and also made special findings upon interrogatories submitted, in effect as follows: (1) That W. K. Roberts was, at the time he executed the deed to Bullard, of sufficiently sound mind to be responsible. (2) W. K. Roberts did not know, before he executed the deed to the property in controversy, that a settlement could probably be made with the county at fifty cents on the dollar. (3) That W. K. Roberts desired the settlement to be made. (4) That Hauser or the bank agreed, as a partial consideration for said deed, to pay the Perkins mortgage. (5) That the plaintiff bank paid thereon the sum of $3,176.66 on September 16, 1886. (6) That Hauser or the bank agreed, as a partial consideration for said deed, to settle with the county commissioners, and obtain a full release of defendant Roberts from the said judgment then existing against him. (7) That the defendant, W. K. Roberts, knew that the deed was made to Bullard, and executed it with that knowledge. (8) That Mrs. Mary J. Roberts knew that the deed was made to Bullard, and executed and acknowledged it with that knowledge. (9) That Barbour, notary public, took the acknowledgment of the defendant, Mary J. Roberts, to two deeds, one dated May 11, and the other May 14, 1886. (10) That Barbour, notary public, explained the nature of the first-mentioned deed — that is, the deed conveying the property in controversy — to Mary J. Roberts, before she acknowledged the same. (11) That the plaintiff bank furnished sureties on Roberts' official bond, and he knew this. (12) That on September 11, 1886, the plaintiff bank paid, or caused to be paid, to Lewis and Clarke County the sum of $19,125.70 in full settlement of the bond suit, and in discharge of the said judgment against defendant Roberts. (13) That the deed for the premises

in controversy was intended as a deed absolute. (14) That defendants had not decided, before executing the deed to Bullard, to move onto other property, and make a new home. (15) That before executing said deed the defendant, W. K. Roberts, knew of an agreement by the plaintiff to indemnify said sureties, Hauser and Floweree. (16) That said deed was not obtained from said Roberts by concealment of its terms, misrepresentation, or fraud.

Upon the verdict of the jury, judgment was rendered in favor of plaintiff, and against defendants, for the recovery of the possession of the premises in controversy. The defendants moved the trial court for a new trial, based upon a statement of the case; which motion was by the judge of that court heard and overruled, and the defendants appealed both from the order overruling the motion for a new trial, and from the judgment.

The grounds upon which defendants moved for a new trial are substantially two, included under the causes provided by statute, as follows: (1) Insufficiency of the evidence to justify the verdict, and that it is against law. (2) Errors in law occurring at the trial, and excepted to by defendants.

The appellants have set out at great length, and with much repetition, what they allege to be "specifications of particulars in which the evidence is insufficient to justify the verdict and particulars in which the verdict is against law." It may be said, generally, of the so-called "specifications of particulars in which the evidence is insufficient to justify the verdict," that they are not such specifications as required by the third subdivision of section 298 of the Code of Civil Procedure. They are merely statements of the conclusions of appellants that the evidence shows facts contrary to the findings of the jury. For example, the first alleged specification of "insufficiency" of evidence is as follows: "*First.* The evidence shows that the deed from defendants to Massena Bullard, dated May 10, 1886, and on which plaintiff relies, and relied at the trial, as necessary evidence of its title, was intended as a security for the payment of money to S. T. Hauser, and was not an absolute conveyance of the title to the land in controversy, but was a mortgage; and further shows that at the time when Bullard conveyed the land to plaintiff, the plaintiff had notice of the circumstances under which the deed was made to Bullard, and of the right of defendants." Here is

no specification of any particular in which the evidence is insufficient to sustain the verdict. The language quoted amounts to a declaration of conclusions at variance with the verdict of the jury, and nothing more. The so-called specification quoted is a fair sample of the alleged specifications under the head of "insufficiency of evidence to justify the verdict." Each one declares that "the evidence shows" certain enumerated facts or conclusions. It is true, these conclusions asserted by the appellants are contrary to what the jury found; but this is not what the Code contemplates by requiring the party who attacks the verdict of the jury, on the ground of insufficiency of evidence, "to specify the particulars in which the evidence is insufficient to justify the verdict." No variance between the facts found by the jury and the evidence is pointed out; no specification that any fact found by the jury is not sustained by the evidence, with the particulars in which the evidence is insufficient to justify the finding, is pointed out by these so-called specifications.

It is not the requirement of the statute that the statement shall declare that the evidence shows something different from what the jury found, because this would simply put the appellate court upon an inquiry as between the conclusions of the jury and the opinion of the appellant as to what the evidence shows. The statute requires that "the statement shall specify the particulars in which such evidence is alleged to be insufficient."

The statute of this State is identical with that of California upon the question of practice under consideration. The point has been considered in many cases in California, and many illustrations of good and bad practice in this particular are found collected from the California Reports, and discussed in the valuable work of Mr. Hayne on New Trial and Appeal. (§ 150.)

Notwithstanding the infirmity of the specifications of particulars in which the evidence is alleged to be insufficient to justify the verdict, the errors of law complained of by appellants, and especially the errors in giving and withholding certain instructions to the jury, are such that the court has, in this action, carefully examined and considered the evidence as presented by the record, and compared the same with the verdict of the jury. This examination of the evidence leads us to the conclusion that the findings of the jury, both general and special, are sustained

by the evidence. It is true the evidence, in some particulars, is conflicting; but where this is the case, it is the province of the jury to judge both as to credibility of witnesses and as to the weight of testimony, and find where the preponderance lies.

The errors of law complained of by appellants, and urged upon the consideration of the court, are apparently the only points relied upon by them as shown by the argument and authorities cited. The first error thus presented arises from the refusal by the trial court to give instructions numbered 7 and 8 to the jury, as requested by defendants. These instructions are as follows: "(7) That if you believe, from the evidence, that the notary, A. K. Barbour, who took the acknowledgment of the deed, was the attorney and nephew of S. Hauser, for whose benefit it was made, and that said Barbour was a member of the firm of Bullard and Barbour, attorneys, who had charge of the procurement of the said conveyance, and that they, as such, were personally interested in the said conveyance, you should treat the acknowledgment as void. (8) If you believe, from the evidence, that Bullard and Barbour were employed as attorneys for Hauser to obtain the conveyance from the defendants of the land in controversy, and that, by his direction, they took the deed in the name of Bullard, as grantee, for his benefit, and that Barbour, in pursuance of such employment and as his attorney, took the acknowledgment, you should treat it as void."

It appears from the evidence that Mr. A. K. Barbour, who, as notary public, took and certified the acknowledgment to the deed from defendants to Bullard, the plaintiff's grantee, was the nephew of S. T. Hauser, mentioned in this action. It also appears, from the evidence, that the same Bullard and Barbour were partners in the practice of law, and at the time attorneys, among others, employed on behalf of Hauser and Floweree, in said action of the county commissioners against them as sureties on the official bond of W. K. Roberts as treasurer of Lewis and Clarke County. That certain consultations had occurred between Hauser and Roberts, and lastly between Roberts, Hauser, and Bullard, wherein was considered and talked over the circumstances of the suit against Hauser and Floweree as sureties, and the judgment for $43,000 against defendant, W. K. Roberts, in favor of the county, in which Roberts expressed himself as

anxious to have the settlement of said suit against his sureties and the judgment against him made, and proposed certain property, including that in controversy, to be put in, to the extent of its value, to consummate such settlement. That at the last-mentioned consultation Bullard was directed by Hauser and Roberts to draw the deed in question, conveying the property in controversy to Bullard, for the time being, with the understanding that when settlement of said judgment was made, and the same was canceled, and the said Perkins mortgage for $3,000 on said premises was paid, then Bullard should deliver a conveyance of said property to whom Hauser should direct. That immediately following this last-mentioned interview of the parties named, said Bullard gave the said Barbour a description of the land in controversy, and requested him to draw a deed conveying the same from defendants to Bullard, and see to the proper execution and acknowledgment of such deed by defendants as grantors.

There may be some contradiction between the witnesses of the respective sides of this controversy as to some of these statements. The jury has found upon these facts generally, and upon many of them specially, and we refer to them to place the plaintiff and said Hauser, Bullard, and Barbour, and defendants Roberts and wife in the attitude they respectively occupied to this transaction, for the purpose of considering the relationship of Barbour to Hauser as nephew, and the relationship of Bullard and Barbour to Hauser as his attorneys, in reference to this relationship disqualifying Barbour from acting as notary public in taking the acknowledgment to said deed.

The appellants contend that the relationship of Barbour to Hauser, as nephew and attorney, in law disqualified him to act as the officer to take and certify the acknowledgment of the defendants to the deed in question; and that herein the trial court erred in refusing to give the jury said instructions Nos. 7 and 8.

The learned counsel for appellants contends that the act of taking and certifying the acknowledgment to the deed in question was judicial in character, and consequently, by reason of Barbour's relationship to Hauser, both by blood and as attorney, disqualified him, under the statute, to take and certify the

acknowledgment of defendants to said deed, and the same was void. The counsel for appellants has sought, apparently with much industry and research, to establish the point that the act of a notary public, or other qualified officer so to do, in taking and certifying an acknowledgment of a married woman to a deed, is a judicial act; that is, in making the examination, and certifying the fact required by law to be certified, the officer exercises a judicial function. In an examination of authorities on this question (of which there are many), we do not find that courts have held this doctrine without qualification.

Looking back to the common law, we find that one method of extinguishing title to land was by what is termed "a fine." This was accomplished anciently by a real action in a court of record, which in process of time became a fictitious action. Nevertheless, it was a proceeding in a court of record; and consequently the proceedings, and record thereof, could properly be termed "judicial." Blackstone describes this proceeding in the following passage: "A fine is sometimes said to be a feoffment of record, though it might with more accuracy be called an acknowledgment of a feoffment on record; by which it is to be understood that it has at least the same force and effect with a feoffment in the conveying and assuring of lands, though it is one of those methods of transferring estates of freehold by the common law in which livery of seisin is not necessary to be actually given; the supposition and acknowledgment thereof in a court of record, however fictitious, inducing an equal notoriety. But, more particularly, a fine may be described to be an amicable composition or agreement of a suit, either actual or fictitious, by leave of the king or his justices, whereby the lands in question became, or are acknowledged to be, the right of one of the parties. In its original it was founded on an actual suit commenced at law for recovery of the possession of land or other hereditaments; and the possession thus gained by such composition was found to be so sure and effectual that fictitious actions were, and continued to be, every day commenced for the sake of obtaining the same security." The commentator further remarks that "fines, indeed, are of equal antiquity with the first rudiments of the law itself; are spoken of by Glanvil and Bracton, in the reigns of Henry II. and Henry III., as things

then well known and long established." (2 Cooley's Blackst. Com. 348; Co. Litt. 262 *a*.)

This is readily seen to be the prototype of the more modern method prescribed by statute; but these statutes have changed the common-law form by providing for an acknowledgment of certain facts as to the execution of the conveyance before an officer empowered by law to examine as to the facts, and certify the same officially; and this power is not, in all cases, even confined strictly to judicial functionaries.

The cases in which courts have used language to the effect that the act of the officer in taking and certifying an acknowledgment of a married woman was judicial, is found to be where the court was considering whether the certificate by the officer imported absolute verity as to the facts certified, i. e., was conclusive of the facts certified, so far as the law required the certificate to go, or whether the certificate was only *prima facie* evidence of the facts stated therein.

It appears that the decisions are not in harmony upon this point. In some cases the language used shows clearly that the court was reasoning by analogy from the common-law form of fine, and its effect on the statutory form of taking and certifying an acknowledgment and its effect. In some such cases the language goes far towards stamping the latter act as judicial in its nature; but in all these cases a close examination will show that the burden upon the judicial mind was not to decide between the mere terms by which the act should be designated as "judicial," "*quasi*-judicial," or "ministerial," but to decide as to whether the certificate should be conclusive, or only *prima facie* evidence of the facts stated therein. No such consideration is here involved. This question, as to what weight shall be given to the officer's certificate of acknowledgment, is set at rest by section 265, division 5, Compiled Statutes, which provides as follows: "Neither the certificate of the acknowledgment nor the proof of any such conveyance or instrument, nor the record, nor the transcript of the record, of such conveyance or instrument, shall be conclusive; but the same may be rebutted." This has been the statute law during the whole period covered by the transactions in controversy.

Counsel for appellants contend that the act of a notary public

in taking and certifying an acknowledgment to a deed is judicial in character, and that the point applies to the case at bar in this: (1) That the deed in question was made for the benefit of Hauser. (2) That the acknowledgment thereto was taken and certified by Barbour, who was nephew of and attorney for Hauser; and hence the acknowledgment was void, under the provisions of section 547 of the Code of Civil Procedure, as follows: "A judge shall not act as such in any of the following cases: In an action or proceeding to which he is a party, or in which he is interested; when he is related to either party by consanguinity or affinity within the third degree; or when he has been attorney or counsel for either party in the action or proceeding." (3) That said instructions Nos. 7 and 8, refused, ought to have been given as applying this statute to the facts in the case at bar. This provision is found in chapter ix., first division, Compiled Statutes, which treats of courts of justice belonging to the judicial system as provided for the Territory of Montana by act of Congress. To properly construe this statute only requires to look at the context, at its own terms, and at some other provisions of the Code of Civil Procedure. The first section of the Code provides that "there shall be . . . . but one form of civil action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be the same at law and in equity." The second section of the Code of Civil Procedure provides that "in such action the party complaining shall be known as the plaintiff, and the adverse party as the defendant." Here the terms "action" and "party" are defined. The term "judge," as used in section 547, *supra,* occurs many times in said chapter. In the next section (548) it is provided as follows: "A judge shall not act as attorney or counsel in a court in which he is a judge, or in an action or proceeding removed therefrom to another court for review, or in any action or proceeding from which an appeal may lie in his own court." The term "judge," in section 547, undoubtedly refers to the judge of a court of justice; and the verb "act," as there used, refers to the exercise of judicial functions in an action or proceeding pending therein.

In view of the very plain and expressive terms of the statute, that "a judge shall not act as such in an action or proceeding,"

etc., we are of opinion that the statute applies to a judge of a court; and that the term "action or proceeding," used in said section, refers to actions and proceedings in courts of justice, as provided for in the Code of Civil Procedure. (§ 1907, Rev. Stats. U. S.; *Custer County* v. *Yellowstone County,* 6 Mont. 39.) And it seems clear to us that this statute does not include notaries public, nor apply to their actions in taking and certifying an acknowledgment to a deed.

Said instructions Nos. 7 and 8 were properly refused by the trial court, not only for the reasons above expressed, but for the more forcible reason that Hauser was neither shown to be a party to the deed in question, nor beneficially interested in its execution and delivery. If the deed had been made to Hauser as a party to it, or had even been made for his use and benefit, and the acknowledgment thereto by the grantors had been taken and certified by Hauser's nephew and attorney, then the question raised by counsel for appellants would have been more pertinent.

It is shown by the evidence and findings of the jury that the plaintiff bank had, in the first instance, procured the sureties, Hauser and Floweree, on the official bond for Roberts; and that the bank had indemnified these sureties against loss as such; and that the bank was the party in interest as to the loss by reason of recovery against the sureties on said official bond; and that Roberts, the principal on the bond, knew these facts before the deed was executed. The jury also found that the consideration for the conveyance of said property was the agreement that Hauser or the bank would pay and have canceled said judgment against Roberts for $43,000, and the Perkins mortgage debt of $3,000, and that this was done by the plaintiff bank. Then, who was the party beneficially interested in having said conveyance made? If the testimony of witnesses and the findings of the jury be true, then Hauser was neither benefited by the conveyance, nor would he have suffered loss by the withholding thereof, for he was indemnified by the bank against loss as surety. Looking at the position of the parties to the transaction, it seems plain that the parties benefited by the conveyance were the bank and defendant Roberts. It is true, Hauser, being one of the sureties on the bond and the

president of the bank, took an interest in arranging a settlement which was finally consummated.

The appellants further insist, (1) that the deed in controversy was intended as a mortgage, and should have been so construed; (2) that said deed was an executory contract or bond to convey the land in question; (3) that the deed was a power of attorney to Bullard to convey the land in controversy. All these propo-sitions, as applied to the case at bar, are questions of fact. After a searching trial on the allegations set up in the plead-ings, the jury found that the deed was intended as an absolute conveyance.

It is therefore adjudged that the order and judgment of the court below be affirmed, with costs.

DE WITT, J., concurs.

BLAKE, C. J., did not sit in this case, having been trial judge in the court below.