MUSSELSHELL VALLEY FARMING & LIVESTOCK CO., RESPONDENT, *v.* COOLEY ET AL., APPELLANTS.

(No. 6,523.)

(Submitted November 16, 1929.  Decided December 28, 1929.)

[283 Pac. 213.]

*Mr. Ralph J. Anderson* and *Mr. W. W. Mercer,* for Appellants, submitted a brief; *Mr. Anderson* argued the cause orally.

*Messrs. Johnston, Colman & Jameson,* for Respondent, sub-mitted a brief; *Mr. Wm. J. Jameson, Jr.,* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Many years ago, Handel Brothers, predecessors in interest of the plaintiff, and Cooley and Weaver, predecessors in interest of the defendants, were living upon lands which they owned in the valley of the Musselshell. Handel Brothers, intending to take out a ditch from the river to irrigate their lands, posted a notice at the intended point of diversion on November 14, 1891, and within twenty days thereafter filed with the county clerk of the proper county a notice of the appropriation, in which they claimed 2,000 inches of water. Work upon the ditch was commenced immediately, and it was completed late in the fall of 1892. Water conveyed thereby was used for irrigating in the spring of 1893.

On January 20, 1892, Weaver and Cooley filed with the county clerk a notice of appropriation, in which they also claimed 2,000 inches of the waters of the Musselshell River. In this notice they stated they had appropriated the water on January 14, 1892. The notice was properly verified by both appropriators. On February 13, 1892, another notice of appropriation was filed with the county clerk. This bears the names of Cooley and Weaver, verified by Cooley on January 30. In this notice the date of appropriation is given as January 30, 1892, and the description of the lands intended to be irrigated is different from that contained in the notice of January 20. Some of the same land is contained in each notice. Evidently the first notice did not describe the land correctly. Cooley and Weaver constructed their ditch with reasonable diligence and got water on their lands about August 1, 1892. Apparently these neighbors continued the use of their ditches without disturbance until the Milwaukee Railroad was constructed along the Musselshell Valley in 1906 and 1907. The engineers constructing the railroad straightened the channel of the river and cut off the water from the headgates of both ditches. In order to remedy this mischief, the railway company placed a culvert underneath its track and rebuilt a portion of the Handel ditch, diverting the waters of the river through the culvert. With respect to the Cooley-Weaver ditch, which had become known as the Cooley-Jacobs ditch, Jacobs having succeeded to all the rights of Weaver, the company built a dam in the river by which it diverted water through a culvert underneath the railroad track into the old river channel, whereby the water is conducted to the original head of the Cooley-Jacobs ditch. The evidence indicates that the Jacobs and Cooley interests in the ditch and water right were equal.

On November 30, 1917, Handel Brothers purchased the Jacobs interest in the Cooley-Jacobs water right, less twenty-five inches. Thereafter the Handels conducted water from the Musselshell through the Cooley-Jacobs culvert, down the old channel of the river, and through the Cooley-Jacobs ditch to a point where that ditch and the Handel ditch are close

together, where by means of a flume water was diverted from the Cooley-Jacobs into the Handel ditch.

Handel Brothers, as first parties, on March 25, 1919, entered into an agreement with the Director-General of Railroads and the railway company, as second parties, whereby in consideration of $5,000 and other considerations, they released the railway company from its obligation to maintain culverts and channels across its right of way, and consented that the company might remove the same; they surrendered and abandoned their right to take the waters of the river at the point of diversion, which the railway company had provided for them, and the right to conduct such waters along any portion of the railway company's right of way, "save and except as hereinafter expressly granted." Except for the reservation they released and quitclaimed to the railway company all rights of way and easements held by them for the maintenance of the ditch over or across the right of way. They also released the second parties from "any and all damages and claims whatsoever which have heretofore arisen or which may hereafter arise from any changes or alterations made in the ditches or flumes as originally maintained by the first parties," and from any failure of the second parties to properly maintain the culverts, channels, ditches or flumes between certain points. It was then recited in the agreement that "it is understood that it is the purpose of the first parties to hereafter obtain water" from the Cooley-Jacobs ditch, the material portion of which was described, and that the first parties desired to construct a ditch extending from a connection with the Cooley-Jacobs ditch to a connection with the Handel ditch at an approximate point, and the second parties granted them a right to construct and thereafter maintain a ditch across the railway company's right of way for that purpose. It was provided that the first parties should construct and maintain the necessary ditch at their own expense, and the second parties were absolved from any liability if the first parties were unable to make the connection with the Jacobs-Cooley ditch, or to get water therefrom.

It seems that work upon the Cooley-Jacobs ditch by plaintiff's agents brought about this lawsuit.

The court determined by its findings of fact, conclusions of law and decree that plaintiff has a water right from the Musselshell River of 200 inches, appropriated as of date November 14, 1891, and defendants have a right of 200 inches as of date August 1, 1892, and that plaintiff has a right of thirty-five inches equal with defendants' water right; that neither plaintiff nor any of its predecessors in interest ever abandoned any of its water rights or any part thereof, or the right to the use of the original Handel Brothers' ditch, or of the Cooley-Jacobs ditch, or any part of either, except that part of the original Handel Brothers' ditch which was abandoned by agreement with the railway company, after plaintiff's predecessors in interest had acquired an undivided one-half interest in the Cooley-Jacobs ditch; that plaintiff is the owner of an undivided one-half interest in the Cooley-Jacobs ditch; that the capacity of the Cooley-Jacobs ditch in its present state of repair is sufficient to carry defendants' appropriation, but not to carry the Handel Brothers' appropriations in addition thereto, but that the ditch will, if properly repaired and maintained, be sufficient to carry the waters of both. The court ordered that plaintiff, "when the same will not interfere with defendants' right to use such ditch, as herein defined, shall have the right to enter into and upon said ditch and clean out and repair the same" so as to make it of sufficient capacity to carry all of the waters of the river to which both plaintiff and defendants are entitled under the decree; and that "whenever the capacity of the ditch is sufficient to divert and convey such additional amount of water both plaintiff and defendants are perpetually enjoined and restrained from interfering with the rights of the other therein." The defendants have appealed.

The specifications of error challenge: (1) The validity of the notice of appropriation of water right of Handel Brothers; (2) plaintiff's claim to a portion of the Jacobs water right, and its claim to an interest in the Jacobs-Cooley ditch; (3) the findings and conclusions on the question of abandonment;

(4) the court's determination that the defendants' water right is of date August 1, 1892, instead of January 30, 1892.

1. It is not questioned that, except for the verification, ██ the notice of appropriation filed by Handel Brothers with the county clerk is valid on its face. But it appears on the face of the instrument that the appropriators were Fred W. Handel and George W. Handel, doing business under the firm name of Handel Brothers. The notice is signed Handel Brothers, by George W. Handel. The instrument was verified by George W. Handel before Fred W. Handel as notary public.

Section 1255, Division 5, of the Compiled Statutes of 1887, which was in force when the water rights which are the subject of this action were appropriated, provides that any person hereafter desiring to appropriate water must post a notice in writing in a conspicuous place at the point of intended diversion, stating therein the number of inches claimed, the purpose for which it is claimed and the place of intended use, the means of diversion, the size of flume, ditch, pipe or aqueduct in which he intends to divert it, the date of appropriation, and the name of the appropriator. "Within twenty days after the date of appropriation the appropriator shall file with the county recorder of the county in which such appropriation is made a notice of appropriation, which, in addition to the facts required to be stated in the posted notice, as hereinbefore prescribed, shall contain the name of the stream from which the diversion is made, if such stream have a name, and if it have not, such a description of the stream as will identify it, and an accurate description of the point of diversion on such stream with reference to some natural object or permanent monument. The recorded notice shall be verified by the affidavit of the appropriator, or some one in his behalf, which affidavit must state that the matters and things contained in the notice are true." (Compare sec. 7100, Rev. Codes 1921.)

"A failure to comply with the provisions of this chapter deprives the appropriator of the right to the use of water as against a subsequent claimant who complies therewith, but

by complying with the provisions of this Act, the right to the use of the water shall relate back to the date of posting the notice." (Sec. 1257, Div. 5, Comp. Stats. 1887. Compare sec. 7102, Rev. Codes 1921.)

The record provided for in section 1255, "when duly made, shall be taken and received in all the courts of this territory as prima facie evidence of the statements therein contained." (Sec. 1259, Div. 5, Comp. Stats. 1887. Compare sec. 7104, Rev. Codes 1921.)

Compliance with these statutes created a public record, and the record gives notice to all the world of its contents. The object of the statute was to regulate the doctrine of relation back, and to preserve evidence of the right acquired by compliance therewith. (*Murray* v. *Tingley*, 20 Mont. 260, 50 Pac. 723.) The instrument, the recorded notice of appropriation, is an essential step in the acquisition of the water right, and without it the owners of the completed right are not granted the right to relate back the life of their appropriation to the date of posting their notice. Essential is the probative character of the record; "it shall be received in all the courts of this state as prima facie evidence of the statements therein contained."

A water right legally acquired is in the nature of an easement in gross. When acquired by appropriation it amounts to a grant (the fact conditions governing its acquisition considered) by the United States or by the state. (*Smith* v. *Denniff*, 24 Mont. 20, 81 Am. St. Rep. 408, 50 L. R. A. 741, 60 Pac. 398.) The affidavit which the statute requires shall be a part of the notice of appropriation serves the same purpose as, and is of equal dignity with, an acknowledgment. It is more than a mere affidavit as that term is ordinarily understood and applied. It is perhaps instructive to note, briefly, the purpose and effect of an acknowledgment, in force at the time. Section 259, Compiled Statutes 1887, page 661, provided that "every such conveyance and instrument in writing, acknowledged or proved and certified and recorded in the manner prescribed in this chapter, from the time of

filing the same with the recorder for record, shall impart notice to all persons of the contents thereof, and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice." And it was provided in section 264 of the same chapter that when the instrument, having been rerecorded, was lost, the record thereof or the transcript of the record, certified by the recorder under the seal of his office, may be read in evidence without further proof. But neither the record nor.the transcript of the record of the conveyance or instrument shall be conclusive, but the same may be rebutted. (Comp. Stats. 1887, Div. 5, sec. 265; see *First Nat. Bank* v. *Roberts*, 9 Mont. 323, 23 Pac. 718.) ·

A notary public was empowered to administer oaths and to take acknowledgments and proof of deeds required or permitted by the laws of Montana to be recorded or acknowledged. (Sec. 1565, Div. 5, Comp. Stats. 1887, p. 1076.)

There is considerable discussion in the briefs as to whether the act of the notary Handel was judicial or ministerial in character. Under our statutes there is no doubt that it was ministerial. (*First Nat. Bank* v. *Roberts*, supra; 1 Cal. Jur. 246.) But we think the distinction is not important to this case. As we have shown, the position of Fred W. Handel, the notary public, was like unto that of a grantee.

The authorities are in substantial agreement that an officer is disqualified from taking an acknowledgment if he is directly interested in the transaction to which the instrument relates, either financially or beneficially, the rule being founded on public policy. (1 Cal. Jur. 243; 1 R. C. L. 269.) In Ruling Case Law, supra, it is said: "It is not to be gainsaid that the decided weight of authority considers an officer acquiring a beneficial interest under an instrument to be so far incompetent to take the acknowledgment of its execution as to render his act null and void. In some of the decisions the rule is said to rest upon broad grounds of public policy. Other decisions have found the reason for the rule in the probative force accorded to the officer's certificate." (See *First Nat. Bank of Sheridan* v. *Citizens' State Bank*, 11 Wyo. 32,

100 Am. St. Rep. 925, 70 Pac. 726; *Ogden Building & Loan Assn.* v. *Mensch,* 196 Ill. 554, 89 Am. St. Rep. 330, 63 N. E. 1049.) "Because of the probative force accorded to the certificate, as well as the usually important consequences of the instrument itself, public policy forbids that the act of taking and certifying the acknowledgment should be exercised by a person financially or beneficially interested in the transaction." (1 Cyc. 553.) There is some divergence from the general rule. (See 1 R. C. L. 270.) But as said by the supreme court of Georgia in *Southern Iron & Equipment Co.* v. *Voyles,* 138 Ga. 258, Ann. Cas. 1913D, 369, 41 L. R. A. (n. s.) 375, 75 S. E. 248, 249: "While there may be some diversity of opinion in the application of the rule in determining whether an officer is disqualified by interest in the particular case, the wisdom of the rule has never been doubted. The rule that interest will disqualify does not depend upon any statutory prohibition. It arises out of the fact that it is against public policy to permit a grantee or mortgagee, or other person beneficially interested in the transaction, to take an acknowledgment to an instrument in which he is named as a party or has a beneficial interest."

It seems to be universally agreed that an acknowledgment cannot be taken by a grantee. (1 Cal. Jur. 243; *Blackman* v. *Henderson,* 116 Iowa, 578, 56 L. R. A. 904, 87 N. W. 655; *Southern Iron & Equipment Co.* v. *Voyles,* supra.) As we have said, the notary in this was practically in the position of a grantee. He and his brother, claimants of the water right, were the only parties then interested therein, except the impersonal public. Their endeavor was to obtain a grant to the use of water as of date November 14, 1891. In legal effect Fred W. Handel as notary public might as well have administered the oath to himself as to his brother.

As the notice of appropriation was not verified according to law, it was not entitled to record. (*Murray* v. *Tingley,* supra.) But the Handels put water on their land for a beneficial use by means of the ditch in April or May, 1893, according to the testimony. May 1, 1893, would seem an ap-

propriate date for this right. (*Bailey* v. *Tintinger*, 45 Mont. 154, 122 Pac. 575; *Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451; *Donich* v. *Johnson*, 77 Mont. 229, 250 Pac. 963.)

2. On November 30, 1917, C. M. Jacobs and wife and Byron C. Jacobs, unmarried, executed a deed to Fred W. Handel and George W. Handel, the consideration of which was one dollar "together with other valuable considerations, one consideration being that the parties of the first part will be exempted from any work on main ditch or dam." The property conveyed is described as an undivided one-half interest in and to that certain water right of 2,000 statutory or miner's inches of the waters of the Musselshell River, "less 25 statutory or miner's inches thereof, as hereinafter excepted, as the same was appropriated by one George Weaver and one J. R. Cooley on the 14th day of January, 1892, as is set forth in their notice of water right," and the notice of water right as recorded in Book 2 of Water Rights, page 50 of the records of Fergus county, Montana, is set out in full. The grantors then expressly reserved and retained the use of twenty-five inches "at any time that sufficient water for irrigation is running in said ditch and is to be diverted at given points along said present ditch where it intersects said lands of parties of the first part, together with the interest of the parties of the first part in and to the right-of-way of the ditch for the conveyance of the said water right and the appurtenances of the said water right and of the said right-of-way. It is expressly agreed and understood hereby that the said parties of the first part are wholly exempted and relieved from any responsibility for the maintenance and the upkeep of the said ditch and right-of-way of the said water right and the dam and headgates thereto appertaining. To have and to hold all and singular the water right, with the appurtenances, unto the said parties of the second part, their heirs and assigns, to their own proper use, benefit and behoof forever. And the said parties of the first part, for themselves and their heirs, executors, administrators, do hereby covenant, promise and agree to and with the said parties of the first part at the time of the sealing and

delivery of these presents that they are lawfully seized in fee of a good, absolute and indefeasible estate of inheritance in fee simple of and in all and singular the said water right and right-of-way therefor, with the appurtenances, and have good right, full power and lawful authority to grant, bargain, sell and convey the same in the manner aforesaid.''

Fred W. Handel testified that immediately after the execution and delivery of the deed, Handel Brothers changed the original point of diversion of the Handel ditch and diverted water for their use through the Cooley-Jacobs ditch, and thereafter continued that practice each year; also that Mr. Cooley knew of the purchase and thereafter the Handels and Cooley maintained the Cooley-Jacobs ditch jointly, that is, the Handels worked upon the ditch to keep it in repair and Cooley did likewise.

Mr. Jacobs, testifying as a witness for plaintiff, said that he had a conversation with Mr. Cooley, who seemed pleased that Handel Brothers had gone into the ditch, but said there would have to be a lot of work done. Over objection, Jacobs testified that in selling it it was his intention to convey all his right and interest in the ditch, except the right to have twenty-five inches of water conveyed to his land thereby. He said: ''There was no question but what the intention was to convey all my interest in the ditch, right-of-way and everything, ditches and dams and everything else.''

Fred W. Handel, under like objection, said the Handel Brothers were purchasing the ditch, dams, headgates and water rights from the Jacobs people with the understanding that the Handels were to do the maintenance work in the future on the ditch.

If there was any ambiguity in the deed, under the circumstances shown, we have no doubt that the testimony of Messrs. Handel and Jacobs was admissible under sections 7527, 7538 and 10521, Revised Codes 1921, which provide that a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates. (*R. M. Cobban Realty Co.* v. *Donlan*, 51 Mont. 58,

149 Pac. 484; *United States Nat. Bank* v. *Chappell,* 71 Mont. 553, 230 Pac. 1084; *Anderson* v. *Border,* 75 Mont. 516, 244 Pac. 494; *Park Saddle Horse Co.* v. *Royal Indemnity Co.,* 81 Mont. 99, 261 Pac. 880.) We do not think the testimony tended to vary the terms of the instrument in any degree.

We think the only reasonable interpretation of the instrument, considered in its entirety, is that it was drawn for the purpose, and with the intention on part of all, to convey the entire interest of the Jacobs people in the water right, ditch and right of way for the ditch (less twenty-five inches of water and the right to convey the same in the ditch) to Handel Brothers. It is notable that the grantors set forth a copy of their notice of water right, which described the ditch intended to be constructed, and in which was claimed a right of way therefor and the right to keep the same in repair, as well as the right to dispose of the water, ditch and appurtenances, in part or in whole, at any time.

It is insisted by counsel for defendants that under the granting clause no mention is made of the ditch or any interest therein or any right of way for the ditch, and that the reservation clause immediately following specifically mentions the right of way of the ditch as being reserved to the grantors. It is argued that the covenants in a deed will not be so construed as to bring within the scope of a granting clause property which is not mentioned therein, and that the habendum clause may increase the estate in but cannot enlarge the thing conveyed, in support of which authorities are cited. But we do not think these are applicable to the present situation. We think the correct doctrine is stated in Ruling Case Law as follows: "The modern tendency is to ignore the technical distinctions between the various parts of a deed and to seek the grantor's intention from them all, without undue preference to any, giving due effect to all, including both habendum and granting clause, where such can reasonably be done, in order to arrive at the true intention, even to the extent of allowing the habendum to qualify or control the granting clause where

it was manifestly intended that it should do so." (8 R. C. L. 1046.)

Every intention of the parties to a deed is to be ascertained, if possible, from its language, not as it is presented in particular sentences or paragraphs, but according to its effect when viewed as an entirety. (*R. M. Cobban Realty Co.* v. *Donlan*, supra; *Lensing* v. *Day & Hansen Security Co.*, 67 Mont. 382,.215 Pac, 999; *Lee* v. *Lee Gold Min. Co.*, 71 Mont. 592, 230 Pac. 1091; *State* v. *Rosman*, 84 Mont. 207, 274 Pac. 850.) Moreover, where parties to a contract of doubtful or ambiguous meaning have placed a particular interpretation upon it, that interpretation is one of the best indications of their true intent. (*Butte Water Co.* v. *City of Butte*, 48 Mont. 386, 138 Pac. 195.)

It appears, without dispute, that the parties to the contract have interpreted it as a conveyance of the ditch, right of way for the ditch, and the dam whereby the water is diverted, except for the reservation in favor of the grantors. Moreover, it appears that so long as the Handel Brothers were in possession of the plaintiff's property no objection was made by the defendants to their work in maintaining the ditch or in using the same.

Nor do we think there is any sound basis for the defendants' claim that Handel Brothers did not obtain the right to use thirty-five inches of water in the Jacobs right. The evidence indicates to us that Weaver appropriated at least sixty inches of water for use upon his lands by means of the ditch constructed by himself and Cooley, that Jacobs obtained that water right by purchase from Weaver, and that Jacobs never abandoned it.

3. It would seem that the court was justified in concluding that the Handel Brothers appropriated 200 inches of water by the construction and use of their ditch and that they were in the possession and use of this water at the time the head of their ditch was destroyed by the construction of the railroad. The railroad attempted to supply the Handels with a new point of diversion and a ditch to make up that part

which was destroyed. It seems that this effort on part of the railway company was not altogether successful. We observe that the company, in order to do away with the culverts provided for the Handels, and the right of way of the Handel ditch, and damages done to the Handels, paid them $5,000 in money and also accorded them a right of way for their ditch over the railway company's lands for a short distance, in order that the Handels might get their water from the Cooley-Jacobs ditch and the Handel ditch. It is doubtless true that the Handel ditch was not kept in repair and that for a number of years prior to the trial of this case it had been put to little, if any, use. It would be a waste of time and effort to discuss in this opinion the testimony bearing upon the question whether the plaintiff's water and ditch rights have been abandoned. We are satisfied with the conclusion of the trial court. Mere nonuser of a water and ditch right does not constitute an abandonment, as this court has said many times. Having the rights in question, the owners could only be divested of them in some legal manner. As was said by Mr. Justice Matthews, in *St. Onge* v. *Blakely,* 76 Mont. 1, 245 Pac. 532, 536, the owner "could abandon the right, but abandonment is a voluntary act involving a concurrence of act and intent—the relinquishment of possession and the intent not to resume it for a beneficial use. Neither alone is sufficient to bring about the abandonment of the right." (*Thomas* v. *Ball,* 66 Mont. 161, 213 Pac. 597; *Moore* v. *Sherman,* 52 Mont. 542, 159 Pac. 966; *McDonnell* v. *Huffine,* 44 Mont. 411, 120 Pac. 792; *Smith* v. *Denniff,* 24 Mont. 205, 81 Am. St. Rep. 408, 50 L. R. A. 741, 60 Pac. 398.) What is said in these cases need not be repeated; they cover and fully answer all of the arguments made by counsel for defendants on this phase of the case.

4. The court misconceived the doctrine of *Murray* v. *Tingley,* supra, in giving the joint right of plaintiff and defendants—plaintiff 35 inches and defendants 200 inches—the date of August 1, 1892. The reason for the court's action seems to have been that the parties were unable to prove the date

when their predecessors in interest posted the preliminary notice upon the bank of the stream. The court therefore fixed the date as of the time when the ditch was completed and the parties got water on the land. The statutory requirement that the intending appropriator must, as his first act of appropriation, post a notice at the intended point of diversion, is to give the world notice that he intends to do what is stated in the notice, that is, to tap the stream at the point where the notice is posted by means of a ditch of certain size, and to appropriate water for use upon lands, for the purposes mentioned. Necessarily this notice is temporary. (Compare *Sanders* v. *Noble*, 22 Mont. 110, 55 Pac. 1037.) The appropriator cannot be expected to maintain it indefinitely. This fact was appreciated by the lawmakers who prescribed that within twenty days after posting the notice the appropriator should file a notice of appropriation with the county clerk containing the statements set forth in the posted notice, with additional information. The instrument filed with the county clerk thus became a public notice to all the world and superseded the posted notice. That this is so is demonstrated by the provision of the statute which makes the record prima facie evidence of the statements therein contained, one of which is the date of appropriation.

The date of posting the notice at the point of diversion may become very important as between two closely competing parties. But there is no difficulty here on this score.

Under the circumstances surrounding the appropriation, with special reference to the diligence with which the parties proceeded to work upon the ditch, and in view of the pleadings of the litigants who seem to agree that the Cooley-Weaver right was initiated in January, 1892, we think it just to give these rights the date of January 30, 1892, the date of appropriation claimed by them in their recorded notice.

The cause is remanded to the district court of Musselshell county, with directions to modify its findings of fact, conclusions of law, and decree in conformity to the views expressed

in this opinion, and when so modified the judgment will stand affirmed. The defendants shall recover one-third their costs on this appeal.

ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN, and HONORABLE WILLIAM L. FORD, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.