STATE ex rel. FOOT, Attorney General, Plaintiff, v. FARMERS' & MECHANICS' STATE BANK, Respondent; HELENA AUTO FINANCE CORPORATION (Intervener), Appellant.

(No. 6,373.)

(Submitted May 20, 1929. Decided June 17, 1929.)

[278 Pac. 828.]

Cause submitted on briefs of Counsel.

*Mr. C. A. Spaulding* and *Messrs. Gunn, Rasch, Hall & Gunn,* for Appellant.

*Mr. Henry C. Smith,* for Respondent.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiff as attorney general to secure the appointment of a receiver of the defendant bank, because of its insolvency. Thereafter, on October 17, 1926, H. E. Longmaid was regularly appointed such receiver, and entered upon the discharge of his duties. Pursuant to notice duly given to creditors, the Helena Auto Finance Corporation presented its claim to the receiver as a general creditor for moneys had and received for its account by the bank, which was disallowed. Thereupon, with the court's permission, the claimant regularly filed its complaint in intervention for the establishment and allowance of its claim, wherein it is alleged: "That at the time the defendant (bank) ceased to do a banking business * * * the said defendant was indebted to this intervener in the sum of $21,045.66, which sum * * * was on deposit with the defendant to the credit of this intervener and subject to check. That said money was collected and received by said defendant from divers and sundry persons and corporations for and on account of this intervener." Answer was filed by the receiver denying any indebtedness by the bank to the intervener, but admitting the filing and disallowance of the claim. A trial was had to the court without a jury, resulting in a judgment dismissing the

complaint in intervention, from which this appeal is prosecuted.

The only question to be decided in final disposition of the case is whether the intervener's claim should have been allowed.

It appears that the Auto Finance Corporation was organized under the laws of Montana, and came into existence on December 18, 1924. The incorporators are W. S. Goodyer, E. A. (Elsie) Goodyer, and John G. Brown, and, according to the testimony of E. A. (Elsie) Goodyer, she was the only one financially interested in the company, and claimed all of the corporate stock, although none had ever been issued. Her husband, W. S. Goodyer, assumed to act as president and business manager of the company, handled its finances, business and accounts, and during all of such times he was a stockholder, director and the cashier of the Farmers' & Mechanics' State Bank at Helena. That bank became insolvent in consequence of the embezzlement of its funds by W. S. Goodyer, to an amount approximating $100,000. Its doors were closed by the state examiner and superintendent of banks on August 24, 1926. Goodyer was sentenced for his crime to a term of imprisonment in the state prison. Subsequently, in March, 1927, his wife, E. A. (Elsie) Goodyer, obtained a decree of divorce from him. On January 10, 1924, Mrs. Goodyer filed claim on behalf of the intervener with the receiver of the bank for the amount alleged to be due; and later, the claim having been disallowed, on January 24, 1927, this action was instituted.

The books of the bank disclose that the Auto Finance Corporation had a checking account in the Farmers' & Mechanics' State Bank of considerable proportions from time to time after December, 1924, which was closed out and balanced on June 30, 1925, more than one year before the failure of the bank, and was never again reopened. After the bank had ceased to do business, Mrs. Goodyer employed the witness Herbert A. B. Brady, an expert accountant, to examine the books of the bank and of the intervener, therefrom, as well as from other sources, to establish, if possible, a basis for intervener's

demands. She had "innumerable interviews" with him, and he worked for "several weeks" in making up the statement of account upon which the claim of the intervener is predicated. His compensation is entirely dependent upon the final establishment and allowance of the claim involved in this action, and the intervener's case is based almost entirely upon his testimony.

It was shown that the Helena Auto Finance Corporation was organized for the purpose of dealing in automobile conditional sales contracts, and that thereafter Elsie A. Goodyer deposited to the credit of the company, for the purchase of such contracts, the sum of $19,350, with which money contracts were purchased. Beginning in January, 1925, payments on many of these contracts becoming due, they were paid to the bank from time to time and credited to the account of the Finance Corporation, totaling $10,126.87. At the time its account was closed with the bank, the Finance Corporation held contracts purchased by it from funds in the checking account, and subsequently, as payments were made on such contracts to the bank, they were credited to the "loans and discounts account" of the bank, and such contracts were carried as bank assets. Collections made on these contracts after June 30, 1925, amounted to $24,975.34. Thus the accountant, Brady, figured credits to the Finance Corporation as follows: Elsie A. Goodyer, deposits $19,350, plus $10,126.87, collected on contracts prior to June 30, 1925, total $29,476.87. On collections made on contracts after June 30, 1925, $24,975.34, which, added to the previous credits, totals $54,452.21. During the time the bank was doing business and the checking account of the intervener was maintained, the bank paid checks against it totaling $32,537.75. Subtracting the amount so paid out on checks from the total amount received by the bank, $54,452.21, Brady says, leaves a balance due the Finance Corporation from the bank of $21,914.46; however, that he has eliminated doubtful items amounting to $868.80, which, when subtracted from the balance by him so shown in favor of the Finance Corpora-

tion, establishes the amount of the intervener's claim, $21,-045.66. The witness argues that, since the auto sales contracts in the bank appear to have been purchased prior to June 30, 1925, they are the intervener's property, and it is entitled to all collections made thereon. However, the witness admits that the books of the bank have been so juggled, in apparent endeavor to cover up defalcations, that such deductions could not be made from the books of the bank alone, and that he was required, in making his determinations, to go to officers and the books of the Union Bank & Trust Company at Helena, where many of the contracts were sold.

Steve Tomchek, a witness for the defendant, testified that the day following the closing of the bank Mrs. Goodyer, in conversation with him, said, in substance, that Mr. Goodyer had sold her Auto Finance stock to the bank, and that Mr. Goodyer had told her that he had a lot of money down at the bank, and asked her what to do with it; that she replied, "Will, why I don't know; you know what to do with it better than I do; invest it in something." The witness states that he then inquired: "Did he invest it?" to which she replied: "He bought some cotton stock a few days later." The witness says that he then said to her: "What did you pay for it, Mrs. Goodyer?" and that she replied: "I didn't buy that on margin like we had been buying it; I bought this outright."

Mrs. Goodyer admitted conversing with Tomchek at the time and place stated, but positively denied having made the statements attributed to her. And she testified that she knew nothing of the business operation of the Finance Corporation, as W. S. Goodyer, her husband, was its manager, and that she "left everything to Bill."

At the trial, W. S. Goodyer, the one and only person having knowledge of the facts, was not produced as a witness, nor was his deposition taken, although he was at Deer Lodge, held in the state's prison, a distance of but little more than fifty miles from Helena, the place of trial. Neither were any of the officers of the Union Bank & Trust Company produced as

witnesses, although some of them must be conversant with the transactions had between them and Goodyer whereby that bank made purchase of Automobile Finance Corporation contracts aggregating $11,307.72. The books disclose that this amount, or, to be more accurate, $11,302.72, was credited to loans and discounts and charged to the account of the Union Bank & Trust Company, thus clearly indicating the disposal of bank assets, the amount received being credited to the bank. There is nothing to indicate that the Auto Finance Corporation had any interest whatsoever in this amount, and this very transaction clearly evidences the fact that such contracts were carried as bank assets.

"Evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce, and of the other to contradict; and therefore, * * * if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust." (Sec. 10672, subd. 7, Rev. Codes 1921.) The burden of proof rested entirely upon the intervener to establish its claim. The trial court had the advantage of seeing the witnesses, hearing them testify, observing their demeanor, and its judgment will not be interfered with on appeal, where, as here, there is evidence to support it.

The court found the issues "in favor of the defendant and against the intervener," and accordingly ordered judgment dismissing the complaint in intervention. The intervener complains that it is impossible to advise this court "upon what grounds the trial court rendered its judgment of dismissal, as no grounds were stated and no reasons given." However, as no request for special findings was made, the intervener is without cause to complain. (Sec. 9369, Rev. Codes 1921; *Farwell* v. *Farwell*, 47 Mont. 574, Ann. Cas. 1915C, 78, 133 Pac. 958.) Under the doctrine of implied 

[4] ings, a particular fact, the existence of which is necessary to support the judgment, is deemed by implication to have been found, where the issues require, and no request was made for an express finding as to such fact. (*Haggin* v. *Saile,* 23 Mont. 375, 59 Pac. 154; *Yellowstone National Bank* v. *Gagnon,* 25 Mont. 268, 64 Pac. 664; *Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6; *Hansen* v. *Larsen,* 44 Mont. 350, 120 Pac. 229; and many other decisions of this court to like effect.)

The appellant has assumed the burden of showing reversible error committed by the trial court; all presumptions being indulged by this court in favor of the judgment. (*Haley* v. *McDermott,* 45 Mont. 217, 121 Pac. 1060.) As before noted, this is an action for money had and received, not for conversion. It devolved upon the intervener to establish by a preponderance of the evidence that the respondent bank actually received money belonging to it. The basis of the action is that the defendant has money in its possession which in equity and good conscience it ought to pay over to another. (17. Cal. Jur., p. 602.) So that we entered upon a consideration and review of this case indulging the presumption that the district court arrived at the correct conclusion and entered the proper judgment. (*Rumney Land & Cattle Co.* v. *Detroit & Montana Cattle Co.,* 19 Mont. 557, 49 Pac. 395; *Haley* v. *McDermott,* supra.) Under the conditions made to appear as respects the dealing of the Finance Corporation with the bank, we are of opinion that the court had ample evidence before it to justify a finding that the automobile contracts comprised a portion of the bank's assets subsequent to the date the Finance Corporation's account was balanced. They were carried as bank assets for more than a year before the bank closed its doors, and they were exhibited to, and passed by, the bank examiner as such. A day or two before the bank was taken over by the state bank examiner, while such action was impending and known to Goodyer, he destroyed many evidences of indebtedness, whether the property of the bank or others is not shown, and he put false debit slips in the files of the bank in attempt to cover his embezzlements, as fol-

lows: Helena Electric Apartments, $2,400 (an account under his control); Helena Ice Company, $4,900 (an account under his control); and Goldberg Fur & Wool Warehouse, $9,800.

It must be remembered that Elsie, or E. A. Goodyer, was the wife of W. S. Goodyer; that in fact she was and is the Helena Auto Finance Corporation (*Barnes* v. *Smith*, 48 Mont. 309, 137 Pac. 541, *Hanson Sheep Co.* v. *Farmers' Bank*, 53 Mont. 324, 163 Pac. 1151); that she entrusted all of the business, money, and bookkeeping of the corporation to her husband; that the checking account of the Finance Corporation with the bank was balanced more than a year before the bank closed; that subsequently the automobile contracts were carried as bank assets; that her husband manipulated the books of the bank, and destroyed records in order to cover up embezzlements aggregating $100,000; and that she evinced knowledge that the contracts had been sold to the bank. It being her property, she should have given it more attention. At any rate, her husband acted as her agent, and, under such circumstances, in view of the condition of the books and records, in equity and good conscience she should not, in the absence of a clear showing, be permitted to establish a claim, the allowance of which would reduce the amount of the bank's assets to be distributed to depositors and other general creditors. Under the conditions shown to exist, the relationship of W. S. Goodyer and his wife to the Auto Finance Corporation, and the confusion in the books and records, it appears to us more equitable that the intervener should suffer loss than to impose additional burdens upon the depositors and directors of the looted bank.

The judgment is supported by the evidence, and, for the reasons stated, is affirmed.

Mr. Chief Justice Callaway and Associate Justices Matthews, Ford and Angstman concur.

Rehearing denied July 3, 1929.