STATE EX REL. REEDER, RELATOR, v. DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,459.)

(Submitted June 29, 1935. Decided July 9, 1935.)

[47 Pac. (2d) 653.]

*Mr. John Collins,* for Relator, submitted an original and a supplemental brief and argued the cause orally.

*Messrs. Gilbert, Gilbert & McFadden,* for Respondents, submitted a brief; *Mr. W. G. Gilbert* and *Mr. Theo. F. McFadden* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

Certiorari to the district court of Beaverhead county, and the Honorable Lyman H. Bennett, as Judge thereof.

On June 13, 1935, the respondent court made and entered an order commanding Charles Reeder, relator herein, to appear June

18 to show cause why he should not be punished for contempt. The order was issued upon the affidavit of Charles E. Calvert, wherein it was alleged that on August 21, 1899, the respondent court made and caused to be entered a decree in an action entitled *Albert D. Young* v. *Mattie Z. Farrington* and others, whereby the waters of Red Rock River were adjudicated and the rights and priorities of all the parties to the action to the use of the waters of that stream were fixed and determined; that on April 15, 1935, the affiant, Charles E. Calvert, was appointed water commissioner "to admeasure and distribute to the parties bound by said judgment and decree, the waters of said Red Rock River to which they were entitled according to their rights as fixed by said judgment and decree"; that ever since his appointment he "has been, and is now, the duly appointed, qualified and acting commissioner to admeasure and distribute to the parties bound by said judgment and decree, the waters of said Red Rock River to which they are entitled, according to their rights as fixed by said judgment and decree"; that on May 28, 1935, Charles Reeder (relator) was in the possession and occupancy of certain dry and arid lands situated in the vicinity of Red Rock River; that on that date, for the purpose of irrigating crops upon his land, relator was causing approximately 500 inches of the waters of Red Rock River to be diverted to his lands by means of a certain ditch commonly known as the Roe-Fagan-Salmonson-Reeder ditch, which taps the Red Rock River; that relator was not a party to the 1899 water suit, and that he is not and never was a successor in interest to the rights of any party to that action; that on May 28, 1935, the waters of Red Rock River were, and ever since have been, inadequate to fill all the rights as adjudicated by the decree; that Calvert informed relator of that fact; and that he, as water commissioner, was going to so regulate the waters of Red Rock River as to cause a cessation of the diversion of any water therefrom by relator to his lands by means of the above-mentioned ditch; but that in spite of Calvert's demand to the contrary, relator continued to divert the water upon his land.

The matter came on for hearing before the respondent court on June 18. At that time relator presented a motion to quash. The court overruled the motion and directed that the cause proceed to trial. Relator stood upon his motion to quash and refused to participate further in the trial. Thereupon evidence was introduced in support of the affidavit. From the testimony of Calvert, it appears that the Roe-Fagan-Salmonson-Reeder ditch taps Red Rock River at a point on that stream above where most of the rights adjudicated by the 1899 decree are taken out of the stream; that Roe and Fagan had decreed water rights in the stream by virtue of the fact that they were successors of one Henry Gleed, a party to the decree; that the water going to Roe and Fagan was sometimes taken from the stream by the Roe-Fagan-Salmonson-Reeder ditch; that they were entitled to receive about 300 inches of water through that ditch; that on or about May 24, 1935, Calvert discovered that relator was taking water from the Red Rock River by means of the above-mentioned ditch; that he then went to relator and told him that there was not enough water in the river to satisfy all the decreed rights, and that relator should therefore cease taking any water from the river through the ditch; that relator replied that he needed the water for his crops and intended to continue using it; and that he did continue using the water. Calvert informed the district judge of this fact, and thereafter, on May 27, the judge instructed Calvert to ''take charge of the Roe-Fagan-Salmonson-Reeder canal'' and not to permit any water to be drawn from the river for this ditch other than decreed water, unless there should be a surplus of water in the stream over and above an amount sufficient to fill and supply all of the adjudicated rights; that pursuant to such instructions Calvert on May 28 went to relator and told him that he had been instructed to shut off the water which relator was using; that he did turn that water back into the stream by opening a control gate in the ditch a short distance from the point where the ditch tapped the stream; that he turned back into the stream all the water except enough to satisfy the decreed rights of Roe and Fagan, which was per-

mitted to continue running through the ditch; that immediately thereafter relator closed the control gate in the ditch so that an excess of water over the amount going to Roe and Fagan was again running through the ditch and to relator's land.

At the close of the hearing, the court found relator guilty of contempt and sentenced him to pay a fine of $50. Thereupon he made application to this court for a writ of review and to have the judgment finding him guilty of contempt annulled and set aside.

It affirmatively appears that relator was not a party, or successor in interest to any party, named in the 1899 decree. There is nothing in the record to indicate that he was not the owner of a valid and subsisting right in the waters of Red Rock River. Indeed, it is apparent that relator was taking water from the stream under a claim of appropriation not adjudicated in the 1899 proceeding. Thus the only question presented in this case is whether a person, not a party to a decree, can be in contempt for withdrawing water from a stream notwithstanding the fact that he may be a bona fide appropriator, although his rights were not adjudicated.

The use of waters in streams being declared by the Constitution (Art. III, sec. 15) to be a public use, every citizen is entitled to divert and use them so long as he does not infringe upon the rights of some other citizen who has acquired a prior right by appropriation. (*Bullerdick* v. *Hermsmeyer,* 32 Mont. 541, 81 Pac. 334.) "An action to ascertain, determine, and decree the extent and priority of the right to the use of water partakes of the nature of an action to quiet title to real estate." (*Whitcomb* v. *Murphy,* 94 Mont. 562, 23 Pac. (2d) 980, 981.) A substantive property right of that kind cannot be adjudicated through the medium of contempt proceedings. (*Ryan* v. *Quinlan,* 45 Mont. 521, 124 Pac. 512; *State ex rel. Boston & Mont. Con. C. & S. Co.* v. *District Court,* 30 Mont. 96, 75 Pac. 956, 962; *State ex rel. Zosel* v. *District Court,* 56 Mont. 578, 185 Pac. 1112; *State ex rel. Pew* v. *District Court,* 34 Mont. 233, 85 Pac. 525.) "For this purpose there must be issues presented by for-

mal pleadings in an appropriate form of action at law or in equity, after due notice, when the parties may be heard in the usual way. And it must always be the case where there is a *bona fide* controversy as to ownership of property which has not been adjudicated; otherwise a party might be summarily deprived of his property without due process of law." (*State ex rel. Boston & Mont. Con. C. & S. Min. Co.*, supra.)

In a case quite similar to the case at bar, this court held that ▮ a decree cannot bind persons not parties, or not privies to parties, to the action, and not connected with the litigation or with the parties thereto. (*State ex rel. Pew* v. *District Court,* supra; see, also, *State ex rel. Tague* v. *District Court,* post, p. 383, 47 Pac. (2d) 649; 1 Wiel on Water Rights, sec. 626, ▮▮ p. 681.) Thus it is manifest that if the present conviction for contempt can be justified, it must be upon the theory that relator interfered wtih the water commissioner in the performance of duties which he is authorized by law to perform.

Respondents rely upon Chapter 43, Laws of 1911 (now sec. 7136 et seq., Rev. Codes 1921), as authority sustaining the conviction for contempt in this case. Section 7136 authorizes the appointment of a commissioner to carry into effect decrees relating to the waters of streams, watercourses, springs, lakes, reservoirs, etc., and to "admeasure and distribute to the parties bound by the decree or decrees the waters to which they are entitled, according to their rights as fixed by such decree or decrees." Section 7140 gives him "authority to admeasure and distribute to the parties interested, under such decree or decrees, the water to which those who are parties to the decree or decrees or privy thereto, are entitled according to their priority as established by the decree or decrees. * * * " Section 7143 authorizes the commissioner to enter upon "any ditch, canal, aqueduct, or other source for conveying the waters affected by the decree, and to visit, inspect, and adjust all headgates, or other means of distributing the waters, and shall have the same powers as a sheriff or constable to arrest any and all

persons interfering with the distribution made by him, to be dealt with according to law.''

It will be noted that by section 7136 the commissioner has authority only to admeasure water according to the rights fixed by the decree. He is not given complete and exclusive jurisdiction to control the stream as such, regardless of whether all rights are adjudicated by the decree under which he is appointed. By section 7140 his powers are limited in the same manner. There is nothing in section 7143 which could be said to extend or enlarge the powers of the commissioner as defined by the preceding sections. Neither is there anything in any of the sections referred to, or any other section to which our attention has been directed, which would give the respondent court the power or right to enlarge the powers and authority vested in the commissioner, in the manner attempted when it instructed the commissioner to ''take charge of the Roe-Fagan-Salmonson-Reeder canal'' and not to permit any water to be drawn from the river for this ditch other than decreed water.

There is no showing that relator interfered with the commissioner in the performance of duties which he is authorized by law (secs. 7136 et seq., supra) to perform. Neither does it appear that relator interfered with any decreed water, after it had been reduced to the possession of a decreed appropriator by delivery into his ditch. It is manifest that he merely took water from the river under a claim of appropriation not adjudicated in the 1899 proceeding. This he had a right to do until it was determined in a proper action that in so taking the water he infringed upon the rights of some other citizen who had acquired a prior right by appropriation. (*Bullerdick* v. *Hermsmeyer*, supra; see, also, *Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451.) There is nothing to show whether his right or appropriation antedates the appropriations of some or all of the parties to the 1899 decree. Neither the commissioner nor the court was empowered to decide in a summary proceeding that relator had no rights in the waters of the stream. As we have already indicated, that matter could be determined only by an appropriate

action at law or in equity, after due notice, when the parties might be heard in the usual way. To hold otherwise, or to permit in a summary proceeding the determination of such a substantive property right would constitute the taking of property or property rights without due process of law. (*State ex rel. Boston & Montana Con. C. & S. Min. Co.* v. *District Court,* supra; *State ex rel. Pew* v. *District Court,* supra.)

This case is distinguishable from the case of *State ex rel. Tague* v. *District Court,* supra, by reason of the fact that in the *Tague Case* the question of privity with a party to the decree was involved, while here there is no such claim.

Accordingly, we hold that the judgment finding relator guilty of contempt and imposing a fine therefor must be annulled, with direction to dismiss the proceeding.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.