STATE ex Rel. SILVE, Relator, *v.* DISTRICT COURT ET AL., Respondents.

(No. 7,704.)

(Submitted June 10, 1937.   Decided June 30, 1937.)

[69 Pac. (2d) 972.]

*Messrs. Freeman, Thelen & Freeman, Mr. E. A. Ewald* and *Mr. George E. Hurd,* for Relator, submitted a brief; *Mr. Hurd* argued the cause orally.

*Messrs. Speer & Hoffman,* for Respondents, submitted a brief; *Mr. Harvey B. Hoffman* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

Application for an appropriate writ (supervisory control or certiorari), directed to the district court of Judith Basin county and the Honorable Stewart McConochie, as judge thereof, whereby the relator, Neil M. Silve, who was adjudged guilty of contempt of that court, seeks to have the judgment annulled, vacated, and set aside.

On February 26, 1929, the district court of the above county entered a decree adjudicating certain of the water rights in Davis Creek and Martin Creek, a tributary thereof. The rights

of relator, one of the defendants in that action, in the waters of Martin Creek were determined by the decree. Being the junior appropriator, the relator, together with his successors and assigns, were perpetually enjoined and restrained from interfering with the other rights adjudicated, including the rights of Frank R. Spencer. The relator and Spencer, the latter of whom was one of the affiants upon whose affidavit the proceeding in contempt was prosecuted in the district court, were both parties to the action and now occupy the same lands they occupied at the time the decree was entered.

On April 15, 1936, Lester E. Black, sheriff of Judith Basin county, and Spencer filed an affidavit in the respondent court charging relator with contempt. They set out that Black is now, and at all times mentioned has been, the sheriff of Judith Basin county; that the decree was duly and regularly made and entered; that Spencer was a party to the suit and to the decree which is alleged to have been violated by relator; that relator is the same person whose rights were adjudicated by the decree; that the decree is still in full force and effect, and that by the decree Spencer was awarded 1,480 miner's inches of the waters of Davis Creek as against Silve; that on April 26, 1930, on application, a writ of assistance was issued out of the district court ordering and directing the sheriff to put Spencer in possession and to maintain and keep him in possession and quiet enjoyment of, the waters of Davis Creek according to the terms of the decree; that the sheriff executed the writ on April 29, 1930; that on several named dates relator opened his headgate and appropriated water "in disregard of," "in violation of," "in disobedience to," and "in defiance of" the decree and of the writ of assistance; that relator was adjudged guilty of contempt for violation of the decree in 1930, in 1931, and again in 1935, and that in 1933 a contempt proceeding was continued until further order of the court upon representation and promises made by defendant to desist from the unlawful user of water "in defiance of the said decree"; and set out the particular violation of the decree on April 13, 1936, upon which this contempt is based, as more fully appears below.

On April 15, 1936, the respondent court issued an order to show cause and a temporary restraining order. Relator then filed an answer wherein, for the purpose of showing that he was not guilty of contempt and had no intention of violating any of the orders of the court, he alleged that in November, 1935, he filed an action in the district court for correction of the decree, on the ground of error in the computation of Spencer's rights, and on the further ground of abandonment by Spencer of a large portion of his water rights; alleged that the sheriff claimed his authority to act with respect to the water rights under the writ of assistance, and denied that the sheriff has or had any right, power or authority by virtue of the writ; alleged that there was not sufficient water in Martin Creek at the time of the alleged contempt to reach the Spencer lands and be put to a beneficial use, and, therefore, defendant believed that he had the right to use the water under the decree; and alleged that a water commissioner has never been appointed, although defendant undertook to have one appointed a few years ago, but was thwarted in such attempt by Spencer.

At the beginning of the trial relator objected to the introduction of any evidence upon the ground that the affidavit did not state facts sufficient to disclose that a contempt was committed by him, for the following reasons: That the proceeding was predicated upon a writ of assistance, and a writ of assistance is limited to the transfer of the possession of lands, and the use of water is not land; that the writ had once served the purpose for which it was issued and had become *functus officio*, and no contempt could be predicated upon a violation thereof; and that, with the allegations concerning the violation of the writ of assistance deleted, nothing remained to charge a violation of the decree.

It is not necessary to decide at this time whether a writ of assistance is proper to enforce a water right decree. All references to the writ which are contained in the affidavit may be treated as surplusage and disregarded.

The affidavit sufficiently charges a violation of the decree, in that it charges ''that notwithstanding that affiants had

closed the headgate on the diversion ditch of said defendant, Neil M. Silve, so as to permit the waters of said Davis Creek to flow to the diversion dam and intake ditch of the said Frank R. Spencer, and did by so doing put the said Frank R. Spencer in possession of the waters of said Davis Creek, * * * according to the terms and conditions and the rights fixed according to said decree, nevertheless the said Neil M. Silve did, on or about the 13th day of April, 1936, wrongfully, unlawfully and without right, immediately open said headgate and closed the headgate on the Spencer ditch and thereby'' appropriate the waters and ''dispossess the said Frank R. Spencer of the waters of said Davis Creek at a time when the said Frank R. Spencer had need of, and desired the use of said waters for the purpose of irrigating his lands for which the use of said waters had been appropriated; all in disobedience of the said decree. * * * ''

The diversion of all of the water of Martin Creek by relator on the date of the alleged contempt, and at a time when Spencer desired, and relator knew that he desired, the use of all the water, is not controverted. It is admitted by relator in his testimony at the trial.

Relator urges that the evidence is insufficient to support a judgment of contempt. He points out that the affidavit charges a taking of the waters of Davis Creek, whereas he diverted the water of Martin Creek. A full answer is that by the findings of fact and the decree Martin Creek is expressly and clearly declared to be a tributary of Davis Creek; that relator's rights were all adjudicated to be stated amounts ''of the waters of Martin Creek, a tributary of Davis Creek''; that by the decree relator was ''perpetually enjoined and restrained from diverting or in any manner interfering with the use of the waters of Davis Creek and of Martin Creek and their tributaries by the plaintiff, Frank R. Spencer, according to the rights'' decreed; and that all parties to the decree were ''restrained and enjoined from in any manner using or diverting the waters of Davis Creek or Martin Creek and their tributaries in any other manner or in any other amounts than'' as decreed.

It is urged further that the evidence is insufficient to show that the water diverted by relator could have reached Spencer's land in a sufficient amount to be put to a beneficial use. The evidence is in conflict as to the amount of water flowing in Martin Creek and Davis Creek on the date of the alleged contempt. Relator and his witnesses estimated that about 15 inches of water flowed at the Silve headgate in Martin Creek. Spencer and his witnesses testified that between 30 and 40 inches were flowing in his ditch where it entered his lands two and three-quarters miles below the Silve headgate. By the time the water reached the Spencer ditch it was the combined flow of Davis Creek and Martin Creek. On April 26, the day of the trial, and thirteen days after the alleged contempt, relator's witness Robbins, an irrigation engineer, went to the creeks and ditches for the purpose of estimating the flow of water. On that date the sheriff closed the Silve headgate. He did so at 10 o'clock in the morning, and it was about five hours later when Robbins investigated the creeks and ditches. At that time the water was flowing out of Spencer's ditch onto pasture land, and Robbins estimated that about 10 inches were flowing out of the ditch. The testimony is that the flow of water was about the same on April 26 as it was on April 13.

In justification of his claim that there was insufficient water flowing to reach the Spencer lands, the relator testified that in 1926 he "figured with the losses" that it required 90 inches of water at his headgate before the water flowing in Martin Creek would reach the Barnes ditch. Barnes ditch is the one of Spencer's ditches which is the farthest from relator's headgate. Relator testified that he understood he had the right to use the water so long as it could not be put to a beneficial use by Spencer, and that he intended to divert it until there were 90 inches of water flowing past his headgate.

The evidence shows that Spencer, the prior appropriator, needed and desired all the water flowing in Davis Creek and its tributaries. He was entitled to it under the decree. Relator's diversion of the entire flow of Martin Creek, a tributary, constituted prima facie a violation of the decree and a

contempt of court. (*State ex rel. Zosel* v. *District Court,* 56 Mont. 578, 185 Pac. 1112.)

Relator bases his defense on the merits upon the claim that ▮ until there are 90 inches of water flowing past his headgate on Martin Creek there is insufficient water, because of seepage and evaporation, to reach Spencer's lands. Where the decree grants injunctional relief against interference with the right of the prior appropriator to a sufficient flow of water to satisfy his claim, the presumption obtains that the court also determined that the waters of the creek did not sink and become lost before they reached the lands of the prior appropriator. (*Howell* v. *Bent,* 48 Mont. 268, 137 Pac. 49.) The decree "stands an absolute finality, not merely as to the conclusions expressed, but as to everything directly or implicitly involved in reaching them." (*Lokowich* v. *City of Helena,* 46 Mont. 575, 129 Pac. 1063, 1065.)

If it be true that the water of Martin Creek will not reach ▮▮ Spencer's lands until a certain volume is flowing therein, so that the water will be lost unless used by relator, the "remedy is, in a proper proceeding for that purpose, to ask for a modification of the decree permitting" relator "to use the water when those conditions obtain." (*Zosel* v. *Kohrs,* 72 Mont. 564, 234 Pac. 1089, 1093.) Evidence relating thereto was inadmissible (*Howell* v. *Bent,* supra; *Zosel* v. *Kohrs,* supra), but the error was harmless here.

To support his contention that Spencer was not making a beneficial use of the water on April 26, the relator relies upon the testimony of Robbins that the water was flowing onto pasture land which probably "might be good hay land if it was irrigated right." The irrigation of pasture land is a beneficial use. (*Sayre* v. *Johnson,* 33 Mont. 15, 81 Pac. 389.) Moreover, Spencer testified that he needed and desired the use of the water for irrigation, and relator admitted he knew that Spencer wanted the water for irrigation.

The contention is made by relator that Spencer's remedy ▮ under the law was the appointment of a water commissioner. There is no merit in this contention. At most the

appointment of a water commissioner offered an alternative method of handling the water. It was not an exclusive procedure in the premises. (*Tucker* v. *Missoula Light & Ry. Co.,* 77 Mont. 91, 250 Pac. 11.)

Writ denied.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON, MORRIS and ANGSTMAN concur.