MISSOULA LIGHT & WATER CO., Respondent, *v.* HUGHES
et al., Appellants; MITCH, Intervener and Appellant.

(No. 7,705.)

(Submitted February 2, 1938.   Decided March 18, 1938.)

[77 Pac. (2d) 1041.]

*Mr. Edward C. Mulroney* and *Mr. John E. Patterson,* for Appellants, submitted a brief, and argued the cause orally.

*Messrs. Murphy & Whitlock,* for Respondent, submitted a brief; *Mr. Edmund T. Fritz,* of counsel, argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is a controversy that primarily involves the right to the use of 65 inches of water appropriated out of Rattlesnake Creek in Missoula county and diverted through the Fredline ditch. The plaintiff is a public utility, having supplied water to the city of Missoula for domestic and municipal purposes for more than half a century, and also supplies water to contracting parties for the irrigation of arid lands. A writ of injunction is prayed for protecting the right awarded the plaintiff in a former action.

The defendants and intervener are engaged in truck and fruit farming in the suburbs of the city of Missoula. In an action begun in 1901, entitled *Missoula Water Co.* v. *Charles E. Williams et al.,* frequently referred to in the record as cause No. 1953, the Missoula Water Company, predecessor in interest of the plaintiff in the action at bar, commenced an action to have the waters of Rattlesnake Creek adjudicated, making fifty different persons and corporations defendants, and after the hearing was begun sixteen other parties were brought in as defendants. From the pleadings and proceedings in that action it is obvious that the purpose was to obtain a full and complete adjudication of all the rights in Rattlesnake Creek. The Missoula Real Estate Association, predecessor in interest of the defendants here, is amongst the defendants named in that action.

Byron and Harry Hughes, defendants here, are brothers, and answered jointly, and for the sake of brevity will hereafter be referred to as Hughes brothers, in distinguishing them from other defendants. And for the same reason the former action of *Missoula Water Co.* v. *Charles E. Williams et al.,* men-

tioned above, will be referred to as cause 1953; that being the number of the action on the docket of the district court of Missoula county. And all the defendants and the intervener will hereafter be referred to as the defendants.

The decree in cause 1953 fixed and determined twenty-three water rights in Rattlesnake Creek; the first being awarded as having been initiated as of April 1, 1866, and the last as of July 25, 1901. A writ of injunction was granted as prayed for and issued, perpetually enjoining all parties from interfering with the rights of all others in that action. The predecessor of the plaintiff here was awarded rights 1, 2, and 3; a first of 946 inches initiated as of April 1, 1866; a second of 160 inches as of November 16, 1868; and a third of 13½ inches as of April 1, 1871, or a combined total of the first rights of 1119½ inches.

By its amended complaint in that action plaintiff's predecessor alleged an appropriation of 2,000 inches in 1864, 1,200 inches in 1868, and another 1,000 inches in 1868—a total of 4,200 inches. The findings of fact specify that the first right was an appropriation through the Mill ditch, the second through the Higgins ditch, and the third through "what is called the first water works or City Flume Ditch." The fourth right awarded was 75 inches, initiated as of May 1, 1871, through the Fredline ditch, 65 inches to the plaintiff, and 10 inches to Philomene Fredline, as administratrix of the estate of John A. Fredline, deceased. This 65 inches is the bone of contention between the parties here. The fifth right of 160 inches, initiated as of April 15, 1872, was awarded jointly to Charles E. Williams and eight other persons. The sixth right, of 20 inches, initiated as of May 1, 1875, was awarded to Alvina Pelkey, Lovina Flagler, and Gus Marotz, and the finding upon which this right was predicated is accompanied by the statement that it is made by reason of "an enlargement of the Fredline Ditch." The decree in the case at bar makes no reference to these 20 inches through the Fredline ditch.

The plaintiff in the action at bar bases its right to the waters diverted through the Fredline ditch upon the award of 65 inches made to its predecessor by the decree in cause 1953.

The defendants Hughes brothers, Taylor, and the intervener were represented by the same counsel, but answered separately; the complaint of the intervener following the lines of the answers of the defendants in essential particulars, except that the answer of Hughes brothers alleges their right to be prior in right to the other defendants and the intervener, as well as prior to the rights of the plaintiff, "except as to the extent that plaintiff may show that it is entitled to."

Affirmatively the defendants allege the right to 504 inches of the waters of the creek, appropriated in the year 1871 by their predecessors in interest, and the continuous use each year since the date of appropriation of 360 inches of the amount alleged to have been appropriated; they further allege that plaintiff's action is barred by the provisions of section 6443, and subdivision 1, of section 6444, Revised Codes of 1907.

Hughes brothers pray that they be awarded 350 inches alleging the necessity for use of an extraordinary amount of water per acre on land devoted to the production of green vegetables—an occupation in which they are engaged. And the defendant Taylor and the intervener Mitch pray that they be awarded 5 inches each, all as of May 1, 1871. All defendants claim as successors in interest of the Missoula Real Estate Association, a corporation. This corporation acquired such rights as it had from A. B. Hammond. Hammond purchased 271⅔ acres of land from John A. Fredline and Philomene Fredline, his wife, in 1883, together with such water rights as they had, and thereafter conveyed the same land and water rights to the Missoula Real Estate Association. And it was parts and parcels of this land conveyed to the defendants and intervener by the Missoula Real Estate Association that the defendants now claim the waters through the Fredline ditch to irrigate.

The defendants, in order to avoid the bar of the rule of *res judicata* by reason of the adjudication in cause 1953, allege that their rights in Rattlesnake Creek have never been adjudicated, that in its pleadings the plaintiff in that action made no claim to any water diverted through the Fredline ditch, and that the court was without jurisdiction to award the plaintiff any right

through such ditch; that no proof was offered in support of such right, and that the decree in that action is null and void.

In the action at bar, the testimony of a number of witnesses was received in evidence, and a number of deeds and other documents were introduced. Among the latter was the judgment roll in cause 1953, first rejected, but later admitted over defendants' objection.

The action at bar was commenced in 1920. The first hearing was had in 1924, and continued intermittently until 1927, and all the proceedings were not completed until 1928. Thereafter, it was under consideration by the trial court until January 2, 1937, at which time the findings of fact, conclusions of law, and decree were made, given, and entered, holding in substance that the decree in cause 1953 was binding upon the Missoula Real Estate Association and upon the defendants as its successors in interest.

The court further found that none of the defendants named and served in the action at bar appeared except Hughes brothers, H. J. Taylor, Patrick Hale, and intervener Ernest Mitch; that Patrick Hale demurred to the complaint and thereafter abandoned the suit; and that G. W. Hartung was not served. Findings 2, 3, and 10 are as follows:

"II. That on the 9th day of July, 1903, in the district court of the Fourth Judicial District of the State of Montana in and for the county of Missoula, a judgment and decree of this court was duly made, given and entered, wherein and whereby the waters of Rattlesnake Creek in Missoula county aforesaid, were duly and regularly adjudicated and decreed and the amounts, priorities and right to the use of said waters were fixed and determined, which said decree became final long before the commencement of this action.

"III. That a certain ditch and water right known as and called the Fredline Ditch and water right was one of the water rights so adjudicated and decreed in said decree, and in the fourth Finding of Fact and in the fourth Conclusion of Law in said decree, the date, priority, amount of water in inches and the right to the use of said ditch and water right, was found

and determined, and in said decree it was found, in effect, that the priority date of the inception of said water right is and was as of May 1, 1871, and the extent of said water right was fixed and determined as being 75 miner's inches of the flow of Rattlesnake Creek and said decree awarded said water right to the extent of 65 inches to Missoula Water Company, a corporation, and said water right to the extent of 10 inches thereof was awarded to Philomene Fredline, as administratrix of the estate of John A. Fredline, deceased.

"X. That said Water right claimed in said cause number 1953 and in this action to be an appropriation of 504 inches of the waters of Rattlesnake Creek appropriated on or about May 1, 1871, is, and has been by this court adjudicated to be a water right of 75 inches, and no more, and that of said 75 inches, the Missoula Water Company, plaintiff in said cause number 1953, was adjudged to be the owner and entitled to the use and enjoyment of 65 inches thereof, and said Philomene Fredline, as administratrix of the estate of John A. Fredline, deceased, was adjudged to be the owner and entitled to the use and enjoyment of 10 inches thereof, and all other persons parties to said action 1953, hereinabove referred to, were excluded from and denied the use and enjoyment of said water, save and except subject to the prior right of said Missoula Water Company, a corporation, and said Philomene Fredline, as administratrix of the estate of John A. Fredline, deceased, and all persons, particularly the Missoula Real Estate Association, a corporation, and its successors in interest, agents, servants, and employees, and all persons acting through and under it, were perpetually enjoined from in any manner interfering with the rights of said Missoula Water Company, a corporation, and said Philomene Fredline, as administratrix of the estate of John A. Fredline, deceased, as in said decree established."

By specific reference, the findings of fact and conclusions of law predicated thereon were incorporated in and made a part of the decree.

Conclusion of law No. 4 is as follows: "IV. That the plaintiff herein and its successors in interest are entitled to a decree of

this court enjoining and forever restraining the defendants and the intervener herein and each of them, their assigns, personal representatives, tenants, sub-tenants, agents, attorneys, employees, successors in interest and persons acting in aid of them or any of them, from in any manner interfering with the use by the plaintiff and its successors in interest, of the said water or waters so decreed, and they, and each of them, shall be perpetually restrained and enjoined from ever, at any time, interfering or intermeddling with the water or water rights mentioned and described in the pleadings in this action.''

The injunction was issued as directed. The matter comes here on two appeals by the defendants; one from the final judgment and the other from an order overruling defendants' exceptions to defective findings and defendants' request for findings, such order being made and filed April 3, 1937. In the briefs and oral arguments both appeals are argued as one, and they will be so considered here.

Twenty-one specifications of error are assigned, but except the first assignments, to the effect that plaintiff's action is barred by the statute of limitations, all the assignments and the contentions in support thereof revolve around the question as to whether or not the judgment in cause 1953 is null and void. But some of the collateral contentions will be considered as well as the affirmative relief asked for by the defendants.

We think the assignment of error and contentions in support thereof, to the effect that plaintiff is barred from maintaining this action by reason of the statutes of limitations, are without merit. The statutes mentioned are now sections 9027 and 9028 of the 1935 Revised Codes, and are not applicable here. They provide a limitation upon the time within which one who has obtained a judgment may claim the fruits of such judgment, but do not limit the life of a title to property fixed by a court decree.

The ultimate relief sought by the action in cause 1953 was the adjudication of the water rights in the stream and an injunction protecting those rights. The rights were adjudicated

and the injunction was issued, and all that was there sought was accomplished when that was done.

Plaintiff grounds its claim of right to the use of the waters involved upon the award made to it of the 65 inches by the old decree. Suits to adjudicate water rights are in the nature of actions to quiet title to realty. (*State ex rel. Reeder* v. *District Court*, 100 Mont. 376, 47 Pac. (2d) 653; *Rickey Land & Cattle Co.* v. *Miller & Lux*, (C. C. A.) 152 Fed. 11, affirmed 218 U. S. 258, 31 Sup. Ct. 11, 54 L. Ed. 1032.) The running of time tends to strengthen rather than destroy title determined by decree.

Before proceeding with the consideration of the various contentions and arguments, we will state that it is our opinion that the plaintiff has not pursued the proper remedy here. By the decree in cause 1953 plaintiff's predecessor in interest was granted a writ of injunction perpetually restraining all parties from interfering with the rights there adjudicated. So far as it appears from the record, that injunction is still in full force and effect, and, instead of asking for a new writ, plaintiff should have had the defendants cited for contempt. Such was held to be the proper remedy in *Montana Ore Purchasing Co.* v. *Boston & Montana C. C. & S. M. Co.*, 27 Mont. 410, 71 Pac. 403, where a situation arose similar to that involved here. However, if the action at bar were ordered dismissed for the above reason and plaintiff proceeded in contempt, the defendants in all probability would advance the same grounds for defense that they advance here, and the matter would come back to us for final determination. In view of such situation we deem it advisable to ignore the irregularity and proceed to a determination of the controversy.

Defendants contend that the decree in the action at bar is null and void for the reason that the rights of the defendants were not in issue in cause 1953, and, that decree being the only ground upon which the findings of the court in this action are founded, the decree here is left unsupported. While defendants' pleadings, literally construed, allege the nullity of the decree in its entirety, we think it is obvious from the argu-

ments that defendants' position is that the decree is void as to them only.

In support of the contention of nullity, defendants argue that plaintiff's predecessor in its complaint in the previous action alleged appropriations "at divers times, commencing in 1864," of 4,200 inches out of Rattlesnake Creek; that the complaint was held defective on special demurrer as uncertain on the question of appropriation subsequent to 1864; and that the amended complaint alleged 2,000 inches appropriated in 1864, and two appropriations made at different times in 1868—one of 1,200 and another of 1,000 inches; that no appropriation was alleged to have been made later than 1868, and none was claimed through the Fredline ditch, nevertheless, the decree in that action awarded the plaintiff the 65 inches of water in controversy through the Fredline ditch as of 1871. As a result of this discrepancy between the date of the alleged appropriations and the effective date of the award, the court exceeded its jurisdiction, the award was a nullity, and not a bar to defendants' present claims.

It is further contended that defendants' predecessor in interest is not shown to have been present and participated in the trial of cause 1953, and, therefore, that the complaint could not be deemed to have been amended by any evidence produced.

In support of the first of the two points raised by this contention, namely, an award fixing the right as having been initiated subsequent to the date alleged and through a channel or ditch not claimed by the pleadings, the established rule is that awards may be legally made fixing the date of priority of the award as of another date subsequent to the date alleged in the pleading as the date of initiation. (*Wills* v. *Morris*, 100 Mont. 514, 50 Pac. (2d) 862; *Musselshell Valley F. & L. Co.* v. *Cooley*, 86 Mont. 276, 283 Pac. 213.) And as to the ditch or channel, adjudications of water rights are adjudications of the waters of the stream, not the channel of diversion, and the appropriator being entitled to the water, it matters not whether it was diverted through the Fredline ditch or another. An award of a right to the use of the waters of a stream does

not restrict the diversion through any particular channel, although the particular ditch or channel is frequently used by name to identify the particular right awarded. Proof of ownership in a ditch does not establish any right to the use of the water running therein. The water right and the ditch rights are separable. (*Wills* v. *Morris*, supra; *McDonnell* v. *Huffine*, 44 Mont. 411, 120 Pac. 792.)

On defendants' second contention as to the nullity of the decree, it is argued, in substance, that defendants' predecessor is not shown to have been present and participated in the trial, and, therefore, the complaint could not be deemed to have been amended by the evidence. The record before us contains none of the testimony adduced in cause 1953, and the judgment roll shows nothing material, except the pleadings, findings, and the conclusions of the court, and the decree. Having the affirmative on this phase of the controversy, the burden was on the defendants to establish such contention, and for that purpose they were restricted to the evidence supplied by the judgment roll.

When a judgment has remained unchallenged upon a trial court's records for seventeen years and from which no appeal was taken, and is now, for the first time, alleged to be null and void, it will not be disturbed unless the judgment roll shows clearly and conclusively that the judgment is void upon its face.

We are of the opinion that the rule invoked in *Monteath* v. *Monteath*, 99 Mont. 444, 44 Pac. (2d) 517, 520, applies here. We there said: "It is the rule that, when the record on appeal in an equity case does not present the evidence taken in the court below, it will be presumed that there was sufficient to sustain the findings of the court. (*Thompson* v. *Chicago etc. Ry. Co.*, 78 Mont. 170, 253 Pac. 313; *Gow* v. *Cascade Silver Mines & Mills Co.*, 66 Mont. 488, 213 Pac. 1092.) Every presumption is indulged in favor of the correctness of the decision of the district court. (*Mulholland* v. *Butte & Superior Co.*, 87 Mont. 561, 289 Pac. 574; *State ex rel. Foot* v. *Farmers' State Bank*, 85 Mont. 256, 278 Pac. 828.) "

This court has gone so far as to say that even where one was not technically a party to an action in which a judgment was rendered, but if he were so connected with the case by reason of his interest in the result of the litigation and had actively participated therein, he would be bound thereby. (*Pew* v. *Johnson*, 35 Mont. 173, 88 Pac. 770, 119 Am. St. Rep. 852.)

Furthermore, this contention of the defendants is in conflict with a number of rebuttable presumptions:

1. "That a judicial record, when not conclusive, does still correctly determine or set forth the rights of the parties." (Subd. 17, sec. 10606, Rev. Codes.)

2. "That acquiescence followed from a belief that the thing acquiesced in was conformable to the right or fact." (Subd. 27 of above section.)

The decree in cause 1953 was never appealed from and not attacked for seventeen years after made and entered, and defendants' predecessor acquiesced therein.

3. A judgment not appealed from is conclusive as to all issues raised by the pleadings, actually litigated and adjudged, as shown on the face of the judgment and necessarily determined in order to reach the conclusion announced. (*Brennan* v. *Jones*, 101 Mont. 550, 55 Pac. (2d) 697; *Swaim* v. *Redeen*, 101 Mont. 521, 55 Pac. (2d) 1; *State ex rel. Sullivan* v. *School Dist.*, 100 Mont. 468, 50 Pac. (2d) 252; *State ex rel. Tague* v. *District Court*, 100 Mont. 383, 47 Pac. (2d) 649.)

4. A decree of a court stands as an absolute finality, "not merely as to the conclusions expressed, but as to everything directly or implicitly involved in reaching them." (*Lokowich* v. *City of Helena*, 46 Mont. 575, 129 Pac. 1063, 1065; *State ex rel. Silve* v. *District Court*, 105 Mont. 106, 69 Pac. (2d) 972; *Blaser* v. *Clinton Irr. Dist.*, 100 Mont. 459, 53 Pac. (2d) 1141.)

5. The findings of the trial court in an equity action will not be overturned on appeal unless there is a decided preponderance of the evidence against them. (*Wills* v. *Morris*, supra; *Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451.)

6. Every presumption is in favor of the correctness of the judgment. (*Tucker* v. *Missoula Light & Railway Co.*, 77 Mont. 91, 102, 250 Pac. 11.)

In the case of *Thrasher* v. *Mannix & Wilson*, 95 Mont. 273, 26 Pac. (2d) 370, 372, in response to certain grounds alleged tending to impeach a decree in a water right suit, this court said: "If there was any question as to the validity of that appropriation or the correctness of the result reached by the court, those are matters which any dissatisfied party to that case could have [had] reviewed by this court on proper presentation. But that decree is no longer reviewable. It stands as an absolute finality." (Citing *Lokowich* v. *City of Helena*, supra.)

If defendants cannot find on the face of the judgment, or in the judgment roll, in cause 1953, the proof of the invalidity of that decree as alleged, they may not resort to extrinsic evidence, and under this rule they obviously cannot be heard to say what evidence was produced in cause 1953. (*Ramsey* v. *Burns*, 27 Mont. 154, 69 Pac. 711.) Furthermore, issues may be raised outside the pleadings by the introduction of evidence without objection, or, which is more apt to be what occurred in that action, by a cause being submitted on an agreed statement of facts after such issues as were made up by the pleadings were arrived at. (*Wallace* v. *Goldberg*, 72 Mont. 234, 231 Pac. 56.) Both the court and counsel refer to a stipulated decree in cause 1953, but there is no evidence in the record to support any conclusion that any such stipulation was entered into.

The presumptions enumerated apply to all of the defendants' material contentions relative to the appropriation of 65 inches. The decree in cause 1953 awarded the 65 inches of water involved in the controversy to the plaintiff, and the defendants are estopped from claiming that right. The decree made and entered in cause 1953 is *res judicata* as to the 65 inches mentioned, but defendants allege and prove the use of waters out of Rattlesnake Creek for a long period of years, and such right as they may have has not been clearly adjudicated, and the action at bar will have to be remanded for further proceedings

as to such rights. There is no substantial evidence, however, in the record before us upon which a right of 360 inches or any material part thereof can be established as initiated in 1871 by defendants' predecessors. This conclusion is predicated largely upon the testimony of the witnesses Cave and White in this action. It must be remembered that when the action at bar first came up for hearing in 1924, counsel for plaintiff moved that defendants be required to state whether they would proceed upon a claim of right to the waters of the creek by appropriation by predecessors in interest or by claim of adverse user, and counsel for defendants stated their claim would be by appropriation through predecessors in interest. This we think constitutes a waiver of right by adverse user.

It must be further remembered that, until the enactment of our first water rights statutes in 1885, Laws 1885, page 130, "all appropriations were made pursuant to the rules and customs of the early settlers of California, which had been adopted in Montana territory. * * * The essential elements of an appropriation were a completed ditch and the application of water through it to a beneficial use." (*Maynard* v. *Watkins*, 55 Mont. 54, 173 Pac. 551, 552.) Any appropriation initiated in 1871 obviously arose under the old practice referred to.

Let us see what the judgment in cause 1953 shows about the rights of defendants' predecessor in interest. The Missoula Real Estate Association was made a defendant in that action, appeared and answered. In such answer ownership of certain lands is alleged, and the lands described were the same lands that A. B. Hammond, a predecessor of the Missoula Real Estate Association, purchased from John A. Fredline in 1883. The real estate association alleged the right to 504 inches of water out of Rattlesnake Creek, founding its right to the waters, dams, and ditches upon appropriations made and work done by its predecessors in interest, but no allegation was made as to who its predecessors were; and, like the plaintiff, it also failed to allege any channel through which it diverted the waters claimed. The answer alleged the date of the appropriation as of 1871. Subsequent to the time A. B. Hammond acquired the

Fredline lands and water rights, or on September 28, 1885, shortly after the adoption of our water rights statutes, Hammond filed a notice of water right with the county recorder of Missoula county, claiming an appropriation of 504 inches of the waters of Rattlesnake Creek. This is the only appropriation of 504 inches mentioned in the judgment, and the court in the action at bar found it to be the identical appropriation that was the foundation of the award of the 65 inches involved here to the plaintiff, and the 10 inches awarded to Philomene Fredline, administratrix, by the old decree.

Hammond in his notice claims his water right was derived from predecessors by purchase, naming William Smith, William Edwards, and Hugh O'Neill as such predecessors, but makes no mention of his immediate predecessor, John A. Fredline. The notice substantially complies with the Act of 1885, and recites, in part: "That the special purpose for which said water is intended to be used, and the place of intended use, is to be used for the purpose of furnishing water power for mills and other machinery, booming logs, irrigating and ornamenting lands and grounds and for domestic and other useful and beneficial purposes and to be used on sections Nos. 23 and 26 Tp. 13 N. R. 19 W." After naming the predecessors mentioned, the notice states they made the appropriation on the —— day of ——, 1871. Such notice is prima facie evidence of the date of appropriation (*Vidal* v. *Kensler*, 100 Mont. 592, 51 Pac. (2d) 235; *Wills* v. *Morris*, supra), but is of no evidentiary value on the question of the amount of water actually diverted and beneficially used. The notice alleges ownership of both the water right and ditch by purchase; that he claims the ditch "for said water conveyed by it, or to be conveyed," right of location for dams "constructed or to be constructed," and the right to "enlarge said means of appropriation at any time, and the right to dispose of said right, water, ditch, or appurtenances, in part or whole, at any time." A witness in the action at bar, who had been familiar with the ditch from in the early 70's until the date his testimony was taken in 1924, testified that he thought the ditch had been enlarged at one time about six inches,

but prior to that time it was about two feet wide and about three inches of water were running therein nearly every year since he first saw it. This testimony as to the "three inches" obviously meant running water three inches deep, and did not refer to three miner's inches. Hammond's claim of ownership of the ditch and water right in his notice of appropriation is not in harmony with the recitals in the deed by which he acquired the land and interest in the ditch.

The deed introduced in evidence recites that Fredline conveyed to Hammond 160 acres in section 22, 80 acres in section 23, and 31⅔ acres described by metes and bounds also in section 22, township 13 north, range 19 west, "together with all the right, title and interest of the parties of the first part in and to any and all water rights and ditches on said land and the *undivided half interest* of the parties of the first part in and to a certain water ditch conveying water from said Rattlesnake Creek to and on said land." It does not appear from anything to be found in the record in the action at bar or in the judgment roll in cause 1953 as to who is the owner of the other half of the diversion ditch that carries the 65 inches of water in question.

As heretofore mentioned, Philomene Fredline, administratrix, was awarded 10 inches of water through the Fredline ditch as of "about May 1, 1871." This award was made under finding No. 4; by finding 6, the same decree awarded jointly to three interveners there mentioned 20 inches as of "about May 1, 1875," and in explanation of the award the decree recites that it was made by reason of "an enlargement of the Fredline Ditch." It also appears that the plaintiff in the action at bar later acquired a part of the 10 inches awarded to Philomene Fredline, administratrix, but the present ownership of all the balance of her right of 10 inches is not clearly shown, and the ownership of the 20 inches awarded the three interveners heretofore mentioned by finding 6, and the one-half interest in the Fredline dams and diversion ditch are left in doubt. Further proceedings are necessary to remove such doubt before such rights as the defendants have can be determined.

Finding No. 9 in the action at bar, which by reference was incorporated in the decree, may well be construed as awarding ownership of the Fredline ditch to the plaintiff in its entirety. It is clear from what has heretofore been said that such finding of ownership of the ditch is error.

As tending to establish the fact that defendants have a water right of some nature, we will now present certain provisions of the several deeds by which the lands and water rights were transferred from one party to another, beginning with the deed of Fredline to A. B. Hammond, heretofore mentioned, down to the deeds from the Missoula Real Estate Association to the several defendants.

The deed from Fredline to Hammond describes lands, a part of which is now owned by the defendants. Paragraph 5 of such deed is as follows: "Together with all the right, title and interest of the parties of the first part in and to any and all water rights and ditches on said land and the undivided one-half interest of the said parties of the first part in and to a certain water ditch conveying water from said Rattlesnake Creek to and on said land."

Hammond first conveyed this property to the Montana Improvement Company. Thereafter, by a number of conveyances from one party to another, the title to the entire property that was conveyed by Fredline to Hammond, together with a number of lots described in the deed and located in the city of Missoula, were conveyed to the Missoula Real Estate Association, and in paragraph 13 of that deed, following the description of the land and the lots, is the recital, "together with all water, water rights, dams, ditches, and flumes belonging to said land, or had, used and enjoyed therewith." No other reference is made to the water right in the deed by which the Missoula Real Estate Association acquired title to the lands ultimately conveyed to the defendants. Neither the Fredline right nor ditch are mentioned in the deed.

In a deed dated February 15, 1919, Defendants' Exhibit A-1, the Missoula Real Estate Association conveyed to Byron Hughes and Harry Hughes, for the consideration of $1 certain realty

described as in sections 22 and 23, township 13 north, range 19 west. No specific reference is made to any water right in that deed. The deed was executed by C. H. McLeod, as president, and F. P. Keith, as secretary, and acknowledged by C. H. McLeod. On the same date the Missoula Real Estate Association executed a quitclaim deed, referred to in the record as Defendants' Exhibit B–1, a water right to Hughes brothers, and the grant is described as follows: " * * * Does hereby remise, release, and forever quitclaim unto the said parties of the second part and to their heirs and assigns, all right, title and interest of said party of the first part, if any such it has, in and to all water, water rights and ditches on a certain tract of land in Missoula county, Montana, and a part of the East half of the Southeast quarter (E½ SE¼) of section twenty-two (22), and the South half of the Southwest quarter (S½ SW¼) of Section twenty-three (23), all in Township 13 North Range 19 West, as the same is described in a certain agreement and bargain and sale deed of even date herewith, between the Missoula Real Estate Association as party of the first part, and Byron Hughes and Harry Hughes, as parties of the second part, or connected with and heretofore and now used therewith; also the right, title and interest of the grantor herein in, to and under the reservations for ditches, flumes and pipe lines retained by said party of the first part in that certain deed of conveyance to the Missoula Street Railway Company dated July 12th, 1910, and recorded in Book 62 of Deeds, at page 245 thereof, records of Missoula county, Montana; and all right, title and interest of said party of the first part in, to and under all reservations retained by the party of the first part for water, ditches, flumes, pipe lines and rights of way therefor, in that certain deed of conveyance to Wallace P. Smith, dated July 20th, 1915, and recorded in Book 45 of Deeds, page 212 thereof, records of Missoula county, together with all the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining." From this it appears that the grantor conveyed to the grantees Hughes brothers certain dams, ditches, and water rights which had been reserved in conveyances of

lands made to others. This deed is likewise executed by C. H. McLeod, as president, and F. P. Keith, secretary, of the Missoula Real Estate Association.

The deeds to the defendant Taylor and intervener Mitch each recite the consideration "of $10.00," but make no reference whatever to any water right in connection with the land conveyed to either. From the use of the expression, *"if any such it has,"* in the quitclaim deed conveying the water right to the Hughes brothers, it would appear that the grantor was in doubt as to any water right that it might have, but from various expressions and from the testimony of a number of witnesses for the defendants, it is very clear that a water right of some nature has been used in connection with the lands of the defendants. Particularly is this true in regard to the lands conveyed to the Hughes brothers. We have heretofore said that such rights as the defendants had, or may have, have not been adjudicated, and in this connection we are of the opinion that the decree in cause 1953 does not estop the defendants from proceeding to have such rights determined by an appropriate action.

Section 10561, Revised Codes, provides: "That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto." This section of the statute has been interpreted to some extent in a number of opinions by this court, in a manner that would indicate that such rights as the defendants here claim were necessarily adjudicated in the decree in cause 1953. The question is a close one, but in the case of *Lyon* v. *United States Fidelity & Guaranty* Co., 48 Mont. 591, 140 Pac. 86, 90, Ann. Cas. 1915D. 1036, this court applied the rule which we think is applicable here. It was there said: "The issues in *Perrine* v. *Lyon* were whether these parties were partners, and whether Perrine owned any interest in the property; and, although Perrine did allege the value of the property to be $4,000, and Lyon did deny that it had any value above $1,500, the judgment did not find, nor was it necessary to a determination of the issues that it

should find, the value of the property. The respondent, therefore, was not barred by the judgment from asserting in this case that the property was of greater value. If he was not barred by the judgment, he was not estopped by the mere pleading of such matter; that amounts at most to the statement or admission of an independent fact, presentable in evidence against him, and to be considered by the jury in fixing the amount of his damages. [Citing cases.]''

By reason of the fact that the record shows that the defendants' predecessor appeared and answered in cause 1953, making claim to a certain water right, and the fact that the court in that case failed to make any finding or disposition of the claim of the defendants' predecessor there, we think their right to have such claim adjudicated was not barred by the decree in that action. We are also of the opinion that our conclusion here is supported by the case of *McDuff* v. *McDuff*, 45 Cal. App. 53, 187 Pac. 37, 38, where it was said: ''It is argued that the judgment in favor of the husband in the maintenance suit rendered the questions involved in this action, and particularly that of eviction, *res judicata*. Findings were waived in the maintenance suit, and the record in that case fails to show upon what ground the judgment was entered. So far as the record in that suit shows, the trial judge may have determined that the plaintiff owned this property, and that therefore she had ample means of support without a judgment for maintenance. He may have determined that the plaintiff failed to prove the existence of a cause of action for divorce. In the absence of findings, only those issues which were actually and necessarily included in the judgment, or necessary thereto, are deemed adjudicated. [Citing cases.]''

It might be said that this conclusion in regard to the right of the defendants to have their water rights adjudicated conflicts with the rule of implied findings heretofore mentioned. But we are of the opinion that the rule of implied findings is correctly applied only where the right of a party is expressly determined, and not where, as here, his plea of a specific right is not passed upon, but merely ignored.

The judgment is reversed and the cause remanded for further proceedings to determine the rights of the defendants, "such as they have," but the right to the 65 inches awarded to the plaintiff, having been determined by the former decree, may not be made an issue in any such further proceedings.

ASSOCIATE JUSTICES STEWART, ANDERSON and ANGSTMAN concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, did not hear the argument, and takes no part in the above decision.